McELROY et al. v. SPARKMAN. †

(Court of Civil Appeals of Texas.   Dallas.
June 10, 1911.   Rehearing Denied
June 30, 1911.)

1. EVIDENCE (§ 333*)—RECORDS—ADMISSIBIL-
ITY.
In an action on a dramshop keeper's bond,
the original bond and the judgment of the
county court authorizing him to engage in the
business of a retail liquor dealer are properly
received in evidence, though they have not been
on file among the papers of the case for three
days, as provided by Rev. St. 1895, art. 2312,
relating to the introduction of certified copies of
recorded conveyances.
[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig.
§ 333.*]

2. EVIDENCE (§ 333*)—RECORDS—ADMISSIBIL-
ITY.
In an action on a dramshop keeper's bond,
the original application of the keeper for permis-
sion to pursue the business of a liquor dealer,
and the stub book showing the issuance of a li-
cense to him, are properly received in evidence
as against the objection that the instruments
were required by law to be kept in the office of
the county clerk, and that no certified copy had
been filed with the papers three days before trial.
[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig.
§ 333.*]

3. INTOXICATING LIQUORS (§ 86*) — LIQUOR
DEALERS' BONDS—LIABILITY.
Where the petition, in an action on a
dramshop keeper's bond, alleged the execution of
a bond by the keeper, authorizing him to retail
liquor on a designated lot in a town, and that
he engaged in the saloon business at the place
under the bond in an iron-clad house, that dur-
ing the life of the bond and before the breaches
complained of he removed the building, and
erected another in its stead on the same lot, and
continued to do business there as a retail liquor
dealer under the bond, and the evidence showed
the erection of a new building on the same lot
for the conduct of the business, and that no new
bond was executed, the court properly decided
that the keeper was liable under the original
bond for acts committed in the new building.
[Ed. Note.—For other cases, see Intoxicating
Liquors, Dec. Dig. § 86.*]

4. TRIAL (§ 133*) — IMPROPER REMARKS OF
COUNSEL—INSTRUCTIONS.
Where the court directed the jury, at the
request of defendant, not to consider improper
remarks of plaintiff's counsel, it was not error
to refuse a new trial; no injury resulting to de-
fendant from the remarks.
[Ed. Note.—For other cases, see Trial, Dec.
Dig. § 133.*]

5. INTOXICATING LIQUORS (§ 310*) — DRAM-
SHOP KEEPER'S BOND — VIOLATION — EVI-
DENCE.
In an action on a dramshop keeper's bond,
based on the keeper permitting plaintiff's son to
enter and remain in the saloon, evidence held to
justify a finding that the keeper permitted the
minor to enter and remain in the saloon.
[Ed. Note.—For other cases, see Intoxicating
Liquors, Dec. Dig. § 310.*]

6. TRIAL (§ 192*) — INSTRUCTIONS — ASSUMP-
TION OF FACTS.
An instruction assuming a fact conclusively
established by the evidence is not erroneous.
[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 432–434; Dec. Dig. § 192.*]

7. TRIAL (§ 191*)—VIOLATION OF DRAMSHOP
KEEPER'S BOND—ISSUES—INSTRUCTIONS.
An instruction, in an action on a dram-
shop keeper's bond, for permitting plaintiff's
minor son to enter and remain in the saloon,
that if plaintiff showed that the keeper permit-
ted the minor to enter and remain in the saloon
the jury should render a verdict for plaintiff,
while if plaintiff failed to so prove the verdict
must be for defendant, was not erroneous as
assuming that the minor entered and remained
in the saloon, but left that question to the jury.
[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 420–431; Dec. Dig. § 191.*]

8. INTOXICATING LIQUORS (§ 308*) — DRAM-
SHOP KEEPER'S BOND — VIOLATION — AG-
GRIEVED PARTY.
The court may assume that a mother, who
is the only surviving parent of a minor child,
is the person aggrieved by a dramshop keeper
permitting the minor to enter and remain in
the saloon, so as to permit her to sue on his
bond.
[Ed. Note.—For other cases, see Intoxicating
Liquors, Dec. Dig. § 308.*]

Appeal from District Court, Wood County;
R. W. Simpson, Judge.

Action by Mrs. Emma Sparkman against
F. M. McElroy and another.   From a judg-
ment for plaintiff, defendant named appeals.
Affirmed.

R. M. Smith, D. M. Maynor, and Jones &
Jones, for appellant.   Harris, Britton & Suit-
er, for appellee.

BOOKHOUT, J.   This suit was instituted
in the district court of Wood county, Tex.,
on the 23d day of October, 1908, by the ap-
pellee, Mrs. Emma Sparkman, against F. M.
McElroy and the American Surety Company
of New York.

Appellee alleged in her petition that she
was a feme sole; that on the 4th day of De-
cember F. M. McElroy was licensed to en-
gage in the occupation of retail liquor deal-
er in an iron-clad building situated on the
west end of lot No. 11, block No. 3, of
the town of Winnsboro, Wood county, and
executed a bond to engage in said busi-
ness with the American Surety Company as
surety, as required by law.   Among the con-
ditions was one providing that he (the said
F. M. McElroy) would not permit any minor
to enter and remain in the house where he
was engaged in the business of retail liquor
dealer.   That he paid the tax required by
law.   That after the issuance of said license
and the execution of said bond, and prior
to the 19th day of July, 1908, said F. M. Mc-
Elroy removed his said iron building from
the west end of lot 11, in block 3, and erect-
ed upon said lot a one-story brick building
in its place and stead.   That he continued to
engage in the business of a retail liquor deal-
er in said brick building.

The plaintiff also alleged that she is the
mother of Lloyd Sparkman, who was, in
July, 1908, a minor under the age of 21

years. That the father of said minor is dead, having died prior to July, 1908. That on the 19th and 24th days of July, 1908, the defendant sold to said Lloyd Sparkman intoxicating liquors in violation of his said bond. That on said 19th and 24th days of July, 1908, the said F. M. McElroy permitted the said Lloyd Sparkman to enter and remain in his house, where he was engaged in the business of a retail liquor dealer. That by permitting said minor to enter and remain in his place of business he had violated the obligations of his bond. That on the 27th day of July, 1908, the defendant McElroy against permitted said Lloyd Sparkman to enter and remain in his place of business. That by reason of so permitting him to enter and remain in said place of business he against violated the obligations of his bond. That the sales of intoxicating liquor to said Lloyd Sparkman and the permitting said Sparkman to enter and remain in McElroy's place of business was without the consent, written or verbal, of the plaintiff herein. She prayed for a judgment against F. M. McElroy and the American Surety Company of New York for the sum of $2,500 and costs.

The defendant, F M. McElroy, answered by general demurrer, general denial, and specially that if said Lloyd Sparkman had ever bought any intoxicating liquor from him, or that if said Lloyd Sparkman had ever entered and remained in this defendant's place of business, that he (McElroy) believed, and had good grounds to believe, that the said Lloyd Sparkman was over the age of 21 years. That this defendant had in good faith believed that the said Lloyd Sparkman was a person over the age of 21 years on each and all of the occasions when he was sold intoxicating liquors, and when he was permitted to enter the defendant's place of business. There was a trial before a jury on the 20th day of April, 1910, which resulted in a verdict in favor of the defendants upon the first two counts in the petition, and in favor of the plaintiff for the sum of $500 upon the last count. The court only submitted the case upon three counts, the two sales, the entry, and remaining, as charged in the last count. Defendant's motion for new trial having been overruled, he prosecutes this appeal.

[1] The court did not err in permitting plaintiff to introduce in evidence the original bond executed by F. M. McElroy entitling him to pursue the avocation of liquor dealer. It was not necessary that the same should have been on file among the papers of the case three days, as is required by the statute relating to the introduction of certified copies of duly recorded conveyances of land. R. S. 1895, art. 2312. The court did not err in admitting the original bond in evidence. Componovo v. State, 39 S. W. 1114; Lucas v. Johnson, 64 S. W. 823; Bechtle v. Lewis, 123 Mo. App. 673, 100 S. W. 1107. For the

same reason there was no error in admitting in evidence the judgment of the county court authorizing the defendant to engage in the business of a retail liquor dealer.

[2] Upon the trial the plaintiff was permitted to introduce in evidence, over defendants' objection, the original application of F. M. McElroy for permission to pursue the business of retail liquor dealer; also the stub book showing that a license to pursue that business had been issued to him. The objection to the introduction of these instruments was that the same were instruments required by law to be kept in the office of the county clerk of Wood county, and no certified copy had been filed with the papers of the loss three days before the trial. There was no error in the court's action in this respect.

[3] It is contended in the fifth assignment of error that the court erred in refusing to withdraw from the consideration of the jury the purported retail liquor dealer's bond executed by the defendant F. M. McElroy, after the witness G. M. Houston had testified that the brick building where the defendant was engaged in business was on different land than the iron building described in defendant's bond. This contention is not sustained.

G. M. Houston testified that he was acquainted with the location and place where F. M. McElroy is now engaged in business (he is engaged in the saloon business); his place of business being on lot 11, block 3, in the town of Winnsboro. It is the same lot where he was doing business in July, 1908. The house was originally an iron house. The brick building is where the iron house was. The street has been widened some there. It was an alley. It has been made a street. He moved away the iron-clad building. The iron-clad building stood on the west end of lot 11, block 3, and the brick building now fronts on the west side of block 3, lot 11. That the brick building fronts west just like the ironclad building did. That the iron building was on the west end of lot 11. That the brick building is now on the west end of lot 11.

The defendant testified: "The place where I sold Sparkman the liquor was on the west end block (lot) 11, lot (block) 3, in the town of Winnsboro, Wood county, Tex." He also testified that the iron-clad building fronted the west. That the iron building has been removed, and where it stood has been put into the street. That he gave that to the street. That the street has been widened there. The iron building stood on the west end of lot No. 11, and the brick building is on the west end of lot No. 11, as the street now runs on the ground. That when he went into business in the brick building he did not execute any new bond, but just continued using the old bond he had when he was doing business in the iron-clad building.

The petition alleges the execution of the

bond by McElroy, authorizing him to pursue the business of retail liquor dealer on west end of lot No. 11, in block No. 3, in the town of Winnsboro, Tex., and that said defendant engaged in the saloon business at said place, under said bond, in the iron-clad house, as described in said bond, and that during the life of said bond, and before the breaches complained of, he removed said iron-clad building from the west end of said lot 11, block 3, and erected in its place and stead, on the west end of said lot 11, block 3, a one-story brick house, and that he continued to do business as retail liquor dealer in said house under authority of said bond.

In the sixth and seventh assignments of error it is contended that the trial court erred in not granting a new trial, because of the improper remarks of W. D. Suiter, counsel for plaintiff, in stating in his closing argument to the jury that the American Surety Company had received a fee for making the bond sued upon herein, and because of the improper remarks of W. D. Suiter, when he stated to the jury in his closing argument that the testimony of the defendant, F. M. McElroy, given at the trial of his case in the county court of Wood county, Tex., had been written down as said testimony was given.

[4] The court specially instructed the jury, at appellant's request, that they should not consider the remarks complained of in said assignments. The court having instructed the jury at the request of defendant, to the effect that they should not consider these remarks, it did not err in refusing to grant appellant a new trial; it being evident that no injury was done the appellant by reason of said remarks, even if the same should be held to be improper.

In the sixteenth assignment of error, complaint is made of the court's failure to give requested charge No. 3, requested by defendant, reading as follows: "You are instructed that if you find from the evidence in this case that Lloyd Sparkman followed the defendant McElroy into defendant's saloon for the purpose of getting a note to carry his (Sparkman's) mother, and that he left the saloon immediately upon receiving the note written by McElroy, then the plaintiff cannot recover on this count in her petition, although you may believe from the evidence that Lloyd Sparkman was a minor and the defendant knew it at that time." The proposition presented is that the terms "entry" and "remain," as used in the bond herein sued upon, mean more than a mere entry; they mean that the minor must tarry or loiter in the place where liquors were sold.

Defendant, F. M. McElroy, testified: "I had a conversation with Lloyd Sparkman on Monday (July 27, 1908). He came down there on Monday, and Lloyd said, 'Well, that whisky I got from you the other day, I got on a drunk and got pulled, and they are trying to make me tell where I got it, and they are trying to get me to get you into trouble.' I said, 'Well, did you not tell me that you were 21 years old then?' and he said he did not. I said, 'Well, I reckon there ain't anything else to do if you are not 21.' He said, 'Well, I thought I would come around to see you, and see if you could not do something.' I told him there was nothing to do that I knew of. He said he would take and write an order, and see if he could not get his mama to sign it, or something to that effect. I said, 'If she don't want you to drink, I don't guess she would sign it,' and he said that he might get her to sign it. That was just an order to permit me to sell him whisky. We was down at the side door of the saloon. I said, 'Well, I will step in and write it, and we will see.' Of course I thought if he was willing to do that and help me out in any way, I would do it, as I had sold him the whisky in good faith; so I went on in there, and I went up behind the cigar case and pulled out my tablet, and went to writing it. By the time I got done with it, he walked in. He might have walked in before. When I raised up and tore it off, he walked up to the cigar stand. I just handed it to him, and he walked on out. I thought if it would help me any I would like to have the order. He wanted it; it seemed like he did at least. He wanted me to write the order (meaning the following order): 'This is to give you the right to sell my boy, Lloyd Sparkman, whisky.' Question: You was wanting to fix something that would protect you from any prosecution suits on your bond, or any other prosecution, wasn't you, Frank? Answer: If it would help me out any, I would; and he had done told me he was 21 and got me into it."

Lloyd Sparkman testified on cross-examination: "I told Frank McElroy that I got drunk on that whisky, and that I was not 21. I went down there to find out something to do to keep from sticking him. I had never told him how old I was. I did not want to get him into any trouble. I found him standing about the side door. He asked me how old I was. I told him I was not 21; I told him I was 19. He told me to come in there (in the saloon); that he wanted to see me a minute. He suggested something for me to do. He wanted me to fill out a blank and date it back and sign my name to it, showing I was 21. He said it would clear him; that was to be signed by me. Something was said about my mother. He wrote an order and wanted me to carry it to Mama, and get her to sign it and date it back and clear him, and give him the right to sell whisky. I went in the saloon that time because he asked me in there. He wrote this order shown to me. He told me to carry that home, give it to Mama, get her to sign it, and date it back. He said it would clear him, and they could not hurt him for selling me whisky."

The witness Lloyd Sparkman testified that he was 21 years old on February 14, 1910, and that in July, 1908, he was 19 years old; that he was born in February, 1889. Mrs. Emma Sparkman, plaintiff, testified that Lloyd Sparkman is her son; that he was 21 years old on February 14, 1910. G. M. Houston testified for plaintiff that he was 72 years old; that he had lived in Winnsboro community over 25 years; that he had known Mrs. Sparkman all her life (40 odd years), and that he had known the boy all his life; that he was acquainted with Lloyd Sparkman in July, 1908; that he lived about one-half mile from plaintiff and her son in July, 1908; that Lloyd Sparkman was a very boyish looking boy at that time; that witness knew that Lloyd was not of age, and consequently would not have taken him for a grown man; that he was nothing but a boy; that he looked like he might have been 18 years old; that witness should have taken him then to be 17 or 18 years old, leaving aside witness' knowledge of what his age was, and judging from his appearance.

[5] The evidence was sufficient to justify a finding that the defendant permitted Lloyd Sparkman, a minor, on the occasion in question, to enter and remain in his saloon, within the meaning of the statute. This was a question for the jury to determine under the facts, and we do not feel authorized to disturb their finding. Cox v. Thompson, 32 Tex. Civ. App. 572, 75 S. W. 819; Markhus v. Thompson, 51 Tex. Civ. App. 239, 111 S. W. 1074. It seems to be conceded that the purpose of Lloyd Sparkman in entering the saloon was an unlawful one, i. e., to manufacture evidence to defeat a prosecution of the saloon keeper for selling liquor to the minor. The case does not come within the holding in the case of Tinkle v. Sweeney, 97 Tex. 190, 77 S. W. 609. The court charged the jury as follows: "Now as to the allegation as to the breach of defendants on or about July 27, 1908, charged to have occurred by reason of F. M. McElroy permitting Lloyd Sparkman, a minor, under the age of 21 years, to enter and remain in the house where he (McElroy) was engaged in the business of selling intoxicating liquors to be drunk on the premises. Now if you find that plaintiff has shown by a preponderance of the evidence that F. M. McElroy did, on or about July 27, 1908, permit Lloyd Sparkman to enter and remain in his place of business, you will find for the plaintiff, Mrs. Emma Sparkman, in the sum of $500 for a breach of said bond; if plaintiff has failed to so prove, you will find for defendant as to the alleged breach by reason of permit-

ting Lloyd Sparkman entering and remaining in his place of business on or about July 27, 1908."

It is insisted that this charge is erroneous, in that it assumes, as a matter of law, that Lloyd Sparkman was a person under the age of 21 years on the 27th day of July, 1908, and assumes that Mrs. Sparkman was aggrieved; and it further assumes that Lloyd Sparkman entered and remained in the defendant's place of business, and that the defendant McElroy knew he was in his place of business, and was an instruction to the jury to find for plaintiff, if they found that Lloyd Sparkman entered and remained in defendant's place of business, even though McElroy did not know that he was in his house, and because said charge does not properly define the terms "enter" and "remain."

[6–8] The charge is not subject to these criticisms. The court, under the evidence, was justified in assuming that Lloyd Sparkman was a minor in July, 1908. The question as to whether appellant permitted Lloyd Sparkman to enter and remain in his saloon was by this charge left to the determination of the jury. The plaintiff being the mother of Lloyd Sparkman, the court could assume that she was, under the statute, an aggrieved party. Peavy v. Goss, 90 Tex. 90, 37 S. W. 317.

Again, it is contended that the trial court erred in refusing to give in charge to the jury defendant's special requested charge No. 4, which said charge was as follows: "Gentlemen of the jury, you are instructed that if at the time Lloyd Sparkman entered defendant's saloon for the purpose of getting a note to take to his mother, and the defendant, McElroy, did not invite the said Sparkman to come in and did not know that said Sparkman was in the saloon until he (McElroy) had written said note, and if you further find that said Sparkman immediately left the saloon after the note was handed to him, you will find for the defendant on that count in plaintiff's petition." Under the facts there was no error in refusing this charge. As already stated, it was a question for the jury to determine from all the facts whether the entry of Lloyd Sparkman in appellant's saloon on the occasion in question was an "entry and remaining," within the meaning of the statute. Cox v. Thompson, 32 Tex. Civ. App. 572, 75 S. W. 819.

We have carefully considered all the assignments not discussed, and because we do not find reversible error pointed out in any of them the same are overruled.

The judgment is affirmed.