## A. L. DOUTHIT ET AL. v. THE STATE OF TEXAS.

### No. 1379. Decided December 15, 1904.

**1.—Liquor Dealer's Bond—Description of Premises.**

A liquor dealer's bond is not void for failing to give the street or lot where the business is to be carried on, where the town is laid out with streets named and lots and blocks numbered, but the houses are not numbered. Rev. Stats. arts. 5060c, 5060e. (Pp. 347, 348.)

**2.—Liquor Dealer—License—Constitutional Law.**

The statute requiring a license, license fee and bond for the sale of intoxicating liquors is not unconstitutional, as denying equal protection of

the laws, because producers or manufacturers of wine from grapes grown within the State are exempted from its operation.     Rev. Stats., art. 5060i. (P. 348.)

### 3.—Liquor Dealer's Bond—Successive Recoveries by State.

The State, in actions for breach of a liquor dealer's bond, is not limited to a single recovery, but may maintain successive actions for successive breaches of the bond till its amount is exhausted by recoveries had either by the State or private prosecutors.     Rev. Stats., art. 5060g. (Pp. 346-350.)

### 4.—Permitting Minor in Saloon.

A saloon keeper, having bought a gasoline lamp with which he was unfamiliar, asked a boy of 18, who worked in a restaurant where one was used, into his saloon to see if he could make it work, he staying but a minute or two and for that purpose only. Held that this did not constitute an offense or breach of the dealer's bond not to permit minors on the premises, within the spirit of the law.     (Pp. 350-352.)

### 5.—Statutory Construction—Letter and Spirit.

The principle of statutory interpretation which permits the literal terms of the law to be disregarded where its spirit and meaning are not violated discussed and applied.     (Pp. 351, 352.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Somervell County.

Action by the State against Douthit and the sureties on his bond as a liquor dealer, for breach thereof in permitting a minor in his saloon. The State recovered judgment for the penalty and it was affirmed on appeal by defendants, who thereupon obtained writ of error.

*J. J. Miner* and *T. L. Camp,* for plaintiff in error.—Before the license and bond of a retail liquor dealer can be of any binding force or effect, the application for license, the license, and bond, must designate the particular place and house in which the business of retailing liquor is to be carried on, with such certainty as that the place or house can be identified and located by the description in said instruments. Southard v. Green, 1 Texas Ct. Rep., 196; Saffroi v. Cobun, 7 Texas Ct. Rep., 303; Green v. Southard, 2 Texas Ct. Rep., 240; United States v. Boecker, 88 U. S., 652; Carter v. Nicol (Iowa), 90 N. W. Rep., 352; Spake v. People, 89 Ill., 617; Zielke v. State, 42 Neb., 750; Fry v. Kaessner, 48 Neb., 133; Russell v. State, 77 Ala., 89; Barnard v. Graham, 120 Ind., 135; Commonwealth v. Bearce, 150 Mass., 389; Dexter v. Town Council of Cumberland, 17 R. I., 222; Commonwealth v. Merriam, 136 Mass., 433; Commonwealth v. Cauley, 150 Mass., 272.

This class of suits exist only by virtue of the statutes, and he who seeks to avail himself of the penalties must strictly comply therewith. De La Garza v. Booth, 28 Texas, 478; Scogins v. Perry, 46 Texas, 111; Murray v. Railway Co., 63 Texas, 413; State v. Vinson, 5 Texas Civ. App., 317; Gulf C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 194; Houston E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551; Schloss v. Railway Co., 85 Texas, 601; Texas & P. Ry. Co. v. Wood, 23 S. W. Rep., 744; De Witt v. Dunn, 15 Texas, 108.

The law, among other provisions, contains the following, which is known as article 5060i, to wit: "The provisions of this chapter shall

not apply to wines produced from grapes grown in the State, while the same is in the hands of the producer or manufacturer thereof." Said law and acts amendatory thereto are contrary to, violative of and repugnant to the Constitution of the United States in that said law, by reason of said last named provision, denies to the defendant and other persons engaged in the sale of spirituous, vinous or malt liquors other than wines produced from grapes grown in the State, while the same is in the hands of the producer or manufacturer thereof, the equal protection of the law; and to that provision of said Constitution which vests in the Congress of the United States power to regulate commerce with foreign nations and among the several States; and to that provision which entitles citizens of each State to all the privileges and immunities of citizens of the several States; and said law is void in that it requires persons desiring to sell intoxicating liquors to be drunk on the premises to enter into a bond in the sum of $5000, conditioned as provided in said statute, and permits other persons to engage in the sale of intoxicating liquors in any quantity, not to be drunk on the premises, without giving such bond, there being no penalty for a sale by such last named persons to an habitual drunkard, during the periods and times covered by the bond sued on, wherein and whereby said statute denies to persons engaged in the sale of intoxicating liquors to be drunk on the premises the equal protection of the law, and denies to such persons the privileges and immunities of citizens of the several States. Giozza v. Tiernan, 148 U. S., 655; Connolly v. Union Sewer Pipe Co., 184 U. S., 540; Ragio v. State, 86 Tenn., 272; Sup. Lodge U. B. A. v. Johnson, 8 Texas Ct. Rep., 816; Pullman Palace Car Co. v. State, 64 Texas, 274; Ex parte Jones, 38 Texas Crim. Rep., 485; Ex parte Westerfield, 55 Cal., 550; Re Garrabad (Wis.), 19 Law. Rep. Ann., 858; State v. Loomis, 21 Law. Rep. Ann., 789 (Mo.); City of Lake View v. Tate, 6 Law. Rep. Ann., 268; Gulf C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150, 87 Texas, 19; Fidelity Mut. Life Ins. Co. v. Mettler, 185 U. S., 308.

In suits of this class the plaintiff is limited by the statute to the recovery of one penalty of five hundred dollars. Rev. Stats., art. 5060g. Note difference in wording in reference to suits by State and by individuals. A recovery by the State is unquestionably a penalty. State v. Vinson, 5 Texas Civ. App., 317; State v. Eggerman, 81 Texas, 571. State is entitled to but one penalty. Washburn v. McInroy, 7 Johns., 134; Tiffany v. Driggs, 13 Johns., 252; Central Ry. v. Green, 86 Pa. St., 427; Sturgis v. Spofford, 45 N. Y., 446; Fisher v. Railway Co., 46 N. Y., 644; Parks v. Nashville C. & St. L. Ry. Co., 49 Am. Rep., 655, 13 Am. and Eng. Enc. of Law, 2 ed., 63, and note 6.

. Where a minor enters the saloon of a liquor dealer for a lawful purpose, and remains therein no longer than necessary for the accomplishment of the purpose for which he entered, such entry and remaining is not a breach of the liquor dealer's bond, and is not within the meaning

of the term "remain" as used in the statute and in the bond. Tinkle v. Sweeney, 8 Texas Ct. Rep., 674; Dickson v. Holt, 5 Texas Ct. Rep., 948; Minter v. State, 8 Texas Ct. Rep., 248; Ghio v. Stephens, 9 Texas Ct. Rep., 442; Cox v. Thompson, 75 S. W. Rep., 819.

*E. P. Lea,* County Attorney; *F. H. Chandler* and *J. F. Daniel,* for defendant in error.—If the appellant's bond and application made in this case and introduced in evidence and on which this suit is based served his purpose as a retail malt liquor dealer, then he can not legally deny the binding force and the legal effect given to said bond and application. It is not necessary that this bond and application for license should designate the place at which and in which the appellant proposed to engage in the sale of malt liquor. Green v. Southard, 61 S. W. Rep., 705; Pearce v. State, 35 Texas Crim. Rep., 150.

The court did not err in refusing to give to the jury defendant's special charge limiting the jury in their finding to only one breach of conditions of the appellant's bond, for the reason that under the law the State can recover a penalty of five hundred dollars for each breach of the conditions of the liquor dealer's bond.

Where it is shown that the liquor dealer calls a minor into his dive and engages him in a business therein, and the liquor dealer is selling his beer or liquor during the time the minor is being in said dive, then such evidence will justify a finding of the jury that he committed a breach of the conditions of his bond in so permitting the minor to enter and remain therein.

GAINES, CHIEF JUSTICE.—The nature of this case is correctly stated in the opinion of the Court of Civil Appeals. The statement is as follows:

"This is an appeal by appellant Douthit and his bondsmen from a judgment in favor of the State of Texas, upon a malt liquor dealer's bond. The State sought and obtained the recovery upon allegation and proof that appellants had breached said bond by permitting Ellis Knott, a minor, to enter and remain in appellant Douthit's place of business, and by failing to keep a quiet and orderly house, as required by law."

The plaintiffs in error present two grounds upon which they claim that no recovery could be had upon the bond.

First it is insisted that the bond was void for the reason that neither the application for the license nor the license itself sufficiently designated the house in which the principal in the bond was to carry on his business. In both the application and the license the place at which the liquor was to be sold is described as follows: "At No. —— Street in the city of Glen Rose, in the county of Somervell." It was shown by the evidence adduced upon the trial that the population of Glen Rose was from 700 to 1000, and that the streets therein are named and the blocks and lots are numbered, but it is also shown that the houses are not numbered. The statute requires that in an application

for license as a liquor dealer, "if (in) a town or city in which the streets are named and houses numbered, the street and number of house shall be given." Rev. Stats., art. 5060c. But one of the requirements of the act is that "the particular place and house in which the liquors are to be sold shall be designated in the license." Rev. Stats., art. 5060e. Clearly the license does not comply with this provision. But in Green v. Southard, 94 Texas, 470, we held that the fact that the house was not designated in the license did not render the bond invalid. We see no reason for receding from that opinion, and it is decisive of the question against the plaintiff in error.

In the second place it is urged that the act of the Legislature under which the bond in controversy was given is void, for the reason, as claimed, that it is in violation of that provision of the Constitution of the United States which secures to all persons the equal protection of the laws. The original act was passed in 1893 and was amended in some particulars by another act in 1897. The sections of the original act are incorporated in the Revised Statutes of 1895 as chapter 1a of title 104. Article 5060i is found in that chapter and reads as follows: "The provisions of this chapter shall not apply to wines produced from grapes grown in the State, while the same is in the hands of the producers or manufacturers thereof." The proposition is, that this provision makes an unreasonable discrimination in favor of producers of native wines and is therefore void. We are unable to distinguish upon any sound principle the point from that ruled upon by the Supreme Court of the United States in the case of the American Sugar Refining Company v. Louisiana, 179 U. S., 89. The statute there passed upon was an act of the Legislature of Louisiana, which imposed a license tax upon refiners of sugar and molasses but exempted from its operation "planters and farmers growing and refining their own sugar and molasses." It was held without dissent that the statute did not deny to sugar refiners the equal protection of the laws secured by the fourteenth amendment to the Constitution of the United States. In the case of Connolly v. Union Sewer Pipe Company, 184 U. S., 540, relied on by the plaintiffs in error, the court distinguished the Louisiana case from the case they were then considering, without in any manner questioning its soundness. We therefore conclude that the act we have under consideration is not in violation of the fourteenth amendment.

It is also contended that the judgment is erroneous because it allows a recovery for two penalties upon the bond. The proposition in substance is, that the statute authorizes a recovery for one penalty only at the suit of the State. The proposition is based upon that provision of the statute which gives a right of action in the name of the State for the recovery of a penalty for the infraction of any of the conditions of the bond. After providing for a suit by "any person or persons aggrieved by the violation of its provisions," and that the "bond shall not be void on the first recovery, but may be sued on until the full penal

sum named therein shall have been recovered," the statute proceeds as follows: "In addition to civil proceedings for individual injuries, brought on said bonds as above indicated, if any person, firm, or association of persons shall violate any of the conditions of the bond herein required, it shall be the duty of the county and district attorneys, or either of them, to institute suit thereupon in the name of the State of Texas, for the use and benefit of the county. and the amount of five hundred dollars as a penalty shall be recovered from the principals and sureties upon a breach of any of the conditions thereof; and whenever the first or subsequent bond as required is exhausted by suit at the instance of individuals, or for the use of the county, a new similar bond shall be given and approved before the dealer shall have the right to further pursue the business of a liquor dealer."

The question presented then is, does the statute allow a recovery in behalf of the State for one penalty only? We recognize the rule, that, since the provision in question is penal in its character. every reasonable doubt as to its construction must be resolved in favor of the obligors on the bond. But we are of opinion, that even if the construction of the statutes is not free from doubt, the intention of the Legislature is reasonably certain. As we have seen immediately preceding the provision under consideration, the statute contains the declaration that "said bond shall not be void upon the first recovery, but may be sued on until the full penal sum named therein shall have been recovered." This language appears in the same sentence in which the right is given to persons aggrieved to sue, and therefore suggests that it was intended to be applied to that matter only. On the other hand, it is to be noted that it is not expressly limited to suits of that character. It speaks of recoveries in general; and there can be no doubt that if it stood alone, as for instance in a separate section, it would be construed to apply to all recoveries whatever. The syntactical arrangement of so much of the statute as relates to suits upon the bond is imperfect. This frequently occurs from the fact that amendments are introduced into a bill while its passage is under consideration; and it seems to us that the thought in the mind of the Legislature while considering the point in question was that the declaration quoted, even in the connection in which it was used, was broad enough to cover both suits by individuals and suits by the State. Again, in the provision itself there is nothing which expressly limits the State to a suit for one penalty only. The words are capable of the construction as if they read. "if any person shall violate any one or more of the conditions of the bond, there shall be a recovery on behalf of the State of the sum of five hundred dollars for each of the provisions so violated." The requirement also, that if the bond be exhausted either by the suit of individuals or for the benefit of the county, a new bond shall be given, shows clearly that it was contemplated that it might be exhausted by a suit at the instance of the State. But it is ingeniously argued that the full penalty of the bond

might be recovered by one suit for the State provided there were a sufficient number of recoveries by individuals. For example, take the case of this bond, which is for one thousand dollars. Here one recovery by the State and one by an individual would exhaust it. It must be conceded that that provision does not necessarily imply that the State could have more than one recovery on the bond. But if it had been intended to limit the State to one recovery, it occurs to us that this would have been a proper place in which to show by apt words that intention. For example, the Legislature, if that had been its purpose, might have said that if the bond be exhausted by the one recovery allowed the State, or by another recovery or other recoveries by individuals, a new bond should be given. In addition to these considerations, no good reason has been suggested, nor does any suggest itself to our minds, why the State should be limited to one recovery. The purpose of making it the duty of county and district attorneys to bring suit in behalf of the State for the benefit of the counties was not to raise money for the counties, but was to enforce the law and the whole law, and it is unreasonable to suppose that it was intended to punish the delinquent for one infaction of the bond and thereby to acquit him of all others save such as injured private persons. Now we are aware that, where the meaning of the statute is clearly expressed, we are not permitted to look to the policy of the law for the purpose of putting another construction upon it. But where the construction of an act is doubtful, the reason of the law and sound policy may be looked to in determining its meaning. When we consider the reason and policy of the provision under consideration we think all reasonable doubt as to its construction with respect to the matter under consideration is removed, and conclude that the purpose of the Legislature was to permit the State to have successive recoveries upon the bond until it was exhausted, either by suits in its own behalf or by suits brought by parties aggrieved or by both.

During the trial, the defendants requested the court to instruct the jury in effect that the evidence was not sufficient to authorize them to find that Douthit had committed a breach of the bond in permitting a minor to enter and remain in his place of business. Ellis Knott was the minor in question, and he was called as a witness in behalf of the State; and the defendant Douthit testified in his own behalf. The testimony relied upon in appellee's brief to support the ruling of the court is that given by Ellis Knott upon his examination in chief. It is as follows: "I am 18 years old; I will be 19 in March next. I am acquainted with Mr. Douthit, the defendant here; I know where he runs a saloon here in the town of Glen Rose; I think I was in his saloon on or about the 25th day of August last; I went in there to help him fix a gasoline lamp; he asked me to come in the saloon and help him fix it, and I went in to help him fix it; I was walking by the door when he asked me to come in and help him with the lamp; I didn't fix the

lamp; I didn't know how; I never saw one just like it before, and I didn't fix it. I stayed in the saloon may be a minute or two. Yes, sir, I just stayed in there a few minutes; I believe they said they were selling beer there in the saloon; I think they sold a couple or three bottles of beer to a fellow while I was in there at that time." Douthit testified: "I was in business at this place on the 26th, 27th and 28th of last August; I knew Ellis Knott at that time; I have known him ever since I have been here, seven or eight years; for the last twelve months he has been working at the restaurant part of the time and part of the time first one thing and then another; at that time I had a gasoline lamp in my place of business; I got it on Tuesday before the picnic on Wednesday; I got it thrown in with some other things; it had been used at Walnut Springs before I got it; there was but one other lamp in the town of Glen Rose like it, and that one was over at the restaurant where Ellis Knott worked; the Gresham boys over at the restaurant had been using the other one here in town; I had no experience in the care and operation of this kind of lamp; that was the first one of the kind I had ever seen; I heard this boy's testimony about coming in my place of business over there; I had lit the lamp and it was not doing right, there was something wrong with it, and he was on the outside of the door, and I asked him if he could fix it, and didn't intend for him to come in the house, but he just come in the house and walked around the lamp and looked at it, and said he never saw one like it before, and said he would run down and tell Louis Gresham to come up and fix it for me, and he just turned around and walked back out on the sidewalk; yes, sir, he got on the inside of the door; he was on the inside for just about ten or fifteen seconds, I guess; I didn't mean for him to come on the inside when I called him, but he walked in and looked at it and said he never (saw) one like it and that he didn't know how to fix it, and that I could get Louis Gresham to fix it; he didn't attempt to fix it himself. At the time I called him in there I had taken the lamp down from where it was hanging up as I thought it might explode, and set it down against the door; this on the evening before the first day of the picnic. This boy has never been in my place of business since that time nor before, that is, since I have been in the beer business in there; I have told the circumstances under which he went in there on that time; and I asked him to fix the lamp knowing that he had had experience in the use of such lamps and for no other reason or purpose."

We think the remark of Blackstone is applicable to this matter: "As to the effects and consequences, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them. Therefore the Bolognian law, mentioned by Puffendorf, which enacted 'that whoever drew blood in the streets should be punished with the utmost severity,' was held after long debate not to extend to the surgeon who opened the vein of a person that fell down in the street with a fit." In this case the minor

did "enter and remain" at least momentarily within the express terms of the statute. But we think that his remaining under the circumstances come within neither the spirit nor the reason of the law. In the case of Tinkle v. Sweeney, 8 Texas Ct. Rep., 674, we held that the liquor dealer did not break the condition of his bond with respect to minors remaining in his place of business, where the minor remained only long enough to buy liquor and to drink it. That decision was placed mainly upon the ground that where a minor entered a saloon and bought liquor the Legislature did not intend to punish the dealer both for selling and for permitting the minor to remain while the sale was being made. It also appeared in that case that the minor entered to get a check cashed and that he must have remained long enough to accomplish that purpose; and while that point was not discussed in the opinion then delivered, it indicates that we did not think that it was a violation of the statute for a minor to enter a saloon to attend to a matter of business, which admitted of prompt dispatch, and to leave as soon as his business was transacted. We think, however, that if the minor had been permitted to enter and remain for any considerable time, though his tarrying be merely for the transaction of business, the case would be different. This court has held that the consent of a widowed mother to the employment of her minor son in a retail liquor dealer's establishment did not shield the dealer from a recovery on his bond; and the case necessarily involves the proposition that, permitting the entry and remaining of the minor pursuant to such employment was a violation of the law. Goldsticker v. Ford, 62 Texas, 385.

We conclude that the judgment, in so far as it allowed a recovery of a penalty for permitting the minor to enter and remain, ought to be set aside. We see no reason, however, for disturbing the judgment in any other respect. Therefore the judgment in so far as it allows a recovery for the minor's entering and remaining is reversed and here rendered for the plaintiffs in error. In all other respects it is affirmed. The plaintiffs will recover the costs of the appeal and of the writ of error.

*Reversed and rendered in part; affirmed in part.*