## HAYNES v. HABERZETTLE et al.

(Court of Civil Appeals of Texas. Texarkana. Dec. 19, 1912.)

1. INTOXICATING LIQUORS (§ 306*) — CIVIL DAMAGE LAWS—EXCEPTIONS.

In an action on the bond of an intoxicating liquor dealer given under a statute (Rev. Civ. St. 1911, art. 7452) making the condition of such bond that the dealer will not sell or give intoxicating liquors to any habitual drunkard after having been notified in writing through a peace officer by the wife of such drunkard, an averment in the petition that defendant was legally notified by plaintiff through a peace officer not to sell intoxicating liquors to her husband, who was an habitual drunkard, is not insufficient for failing to properly allege notification.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 441, 442; Dec. Dig. § 306.*]

2. INTOXICATING LIQUORS (§ 88*) — LIQUOR DEALER'S BOND — BREACH — QUESTION FOR JURY.

Whether there has been an "entering and remaining" in a saloon by a minor so as to create a liability on the liquor dealer's bond, given under the statute (Rev. Civ. St. 1911, art. 7452), is a question of fact, to be determined by the triors of the facts in an action on the bond.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 91–95; Dec. Dig. § 88.*]

3. INTOXICATING LIQUORS (§ 86*) — LIQUOR DEALER'S BOND—BREACH—PERMITTING MINORS TO RESORT IN SALOONS.

Where a minor enters a saloon, makes a purchase of liquor which may not lawfully be sold to him by the proprietor or his agent, and remains only long enough to complete that transaction, the offense will be referred to another provision of the bond specifically covering such conduct, and not that provision rendering the dealer liable for permitting minors to "enter and remain" in the saloon, and where the minor enters for any purpose, and stays only momentarily, or for so brief a space of time that his presence could not in the common acceptation of the term be defined as remaining in the saloon, no liability will be imposed under the condition of the bond for permitting him to enter and remain.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 89; Dec. Dig. § 86.*]

4. CONSTITUTIONAL LAW (§ 70*)—JUDICIAL POWER—ENCROACHMENT ON LEGISLATURE.

The Legislature having the right to provide against minors entering and remaining in saloons, it is not for the courts to attach a qualification to such prohibition which the language of the law does not warrant or the rule of reason dictate.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

5. INTOXICATING LIQUORS (§ 88*) — LIQUOR DEALER'S BOND — BREACH — QUESTION FOR JURY — "REMAINING" — "ENTER AND REMAIN."

While the entry of a minor into a saloon with the purpose of attempting to induce his father, who was intoxicated, to leave the saloon, does not constitute a breach of the liquor dealer's bond, conditioned that he would not permit minors to "enter and remain" in his saloon, where the evidence showed that the father frequently resorted to defendant's saloon, and there became intoxicated, and that his minor sons on various occasions came to the saloon to take their father away, it was a question of fact whether such condition of the bond was broken, in view of the fact that the word "remaining" does not mean a tarrying after the execution of some purpose not unlawful in itself, and the expression "enter and remain" means to stay for some indefinite length of time; that is, longer than is required for an immediate exit.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 91–95; Dec. Dig. § 88.*

For other definitions, see Words and Phrases, vol. 7, pp. 6068–6073; vol. 8, p. 7783.]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by Josie Haynes against Fred Haberzettle and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Alexander, Power & Ridgway, of Ft. Worth, for appellant. McLean, Scott & McLean, of Ft. Worth, and T. L. Camp, of Dallas, for appellees.

HODGES, J. This suit was instituted in the court below by Mrs. Josie Haynes against Fred Haberzettle, as principal, and the Fidelity & Deposit Company of Maryland, as surety, on a retail liquor dealer's bond, to recover the sum of $5,000 as damages for the infractions alleged. The plaintiff is the widow of Tillman Haynes, who died in February, 1911. The petition alleges that during the year preceding his death Haynes was an habitual drunkard; and, after detailing several instances in which plaintiff's two minor sons were permitted to enter and remain in Haberzettle's place of business, it contains this paragraph: "That on January 7, 14, 21, and 28, 1911, after being legally notified on

January 6, 1911, by Josie Haynes, wife of Tillman Haynes, plaintiff herein, through J. N. Nichols, a peace officer duly and legally qualified under and by virtue of the laws of this state, not to sell any spirituous, vinous, or malt liquors capable of producing intoxication to said Tillman Haynes, plaintiff's husband, said defendant Fred Haberzettle, notwithstanding said warning and notice, sold to said Tillman Haynes spirituous, vinous, and malt liquors capable of producing intoxication, and thereby violated and infracted the conditions of said bond." The defendant Haberzettle specially excepted to that portion of the plaintiff's petition designated as "that wherein the plaintiff alleged that defendant sold intoxicating liquors to Tillman Haynes after having been legally notified," etc., for the reason "that said allegation is a conclusion, and is not sufficient to properly allege under the law a notification to the defendant." Defendant also pleaded a general denial, and specially denied that he had been notified in writing not to sell to the plaintiff's husband as alleged. The court sustained the exception, and the case was tried only upon the remaining issues, and a general verdict rendered in favor of the defendants.

[1] Among the errors assigned is the action of the court in sustaining the exception above referred to. The statute (Rev. Civ. St. 1911, art. 7452) provides that the retail liquor dealer before engaging in the business shall give a bond in the sum of $5,000 conditioned for the observance of many legal requirements, among which are the following: "That such person or firm, or his agent or employé, will not sell or permit to be sold in his or their house or place of business, nor give nor permit to be given any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication to any person under the age of twenty-one years, or to a student of any institution of learning, or any habitual drunkard after having been notified in writing through the sheriff or other peace officer by the wife, father, mother, daughter or sister of such habitual drunkard. Said notice shall be in force and effect for a period of two years not to sell to such person, or that he or they will not permit any person under the age of twenty-one years to enter and remain in such house or place of business." The language of the petition in this instance is: "The sale was made by Haberzettle after being legally notified through J. N. Nichols, a peace officer, not to sell," etc. This paragraph, in connection with other portions of the petition, contains the essentials sufficient to substantially state a cause of action. The law required written notice, and the use of the phrase "legally notified" should be held as against an exception so general as this to mean that such notice was given as is required by law. The court erred in sustaining the exception. Osborne v. Prather, 83 Tex. 208, 18 S. W. 613.

The only witnesses who testified upon the trial were the plaintiff and her two small sons aged 11 and 12 years. The evidence shows that prior to his death Haynes worked for the Texas Tank & Culvert Company, and resided with his family in the city of Ft. Worth, within three blocks of Haberzettle's saloon. He was addicted to the habit of drinking intoxicating liquors to excess; and on every Saturday night after drawing his wages he resorted to this saloon, and remained there in a drunken condition until it closed at 2 o'clock in the morning. On such occasions he would not go home for his supper. He was usually drunk from Saturday night until Monday morning. Mrs. Haynes testified to having seen her two little boys in this saloon on several occasions when she was in front of it looking for her husband, while he was on the inside in a state of intoxication. She denied that she ever sent the children inside, or that she consented to their going in. The first occasion to which she testifies to having seen her boys in the saloon was on the 13th of August, 1910. It appears from her testimony that the family had arranged to go with other parties on a fishing excursion on the evening of that day. About 8 o'clock, Haynes being absent, she went down to Haberzettle's saloon in search of him, and found him there in a state of intoxication. The boys had preceded her, and were inside the saloon when she arrived. She says she saw both of her boys in there at that time. They were standing about the middle of the floor of the saloon. They remained in there about 15 minutes. One of the boys was in there later, about 10 o'clock. At this hour it seems that the family and the other parties had engaged a vehicle and drove by the saloon for the purpose of getting Haynes to go with them on the fishing expedition. The boys got out of the wagon, and went inside of the saloon after their father. They were in there several minutes. The father was drunk, but finally came outside, got in the wagon, and went along with the family. She again saw the older of the two boys in the saloon about the 24th of September. It was about 8:30 o'clock at night. Haynes and several other men were on the inside. The purpose of the boy in going in there on that occasion was to get his father out, but she did not send him. She did not know the child was going, and did not allow her boys to go in saloons. She went there on that occasion after her husband's money, and discovered the boy inside of the saloon. They both returned home without Haynes. The child remained in there at that time three or four minutes. When she saw him, he was standing, looking his father in the face. The next date she mentions was the 24th of December of the same year, and about 8:30 at night. The child stayed there about five minutes on that occasion, and was with his father at the time. There was a crowd in the saloon, many of

whom she did not know. Another date mentioned was in January, 1911, and was on Saturday night. She stated that every Saturday night for three months before her husband's death she went to that saloon after him, and this little boy was there every time she went. She generally went from 8 to 8:30 or 9 o'clock. Other instances are mentioned in detail, which we consider unnecessary to give at length. Fred Haynes, aged 12 years, was the older of the two boys. He testified to being in the saloon at the time they were going on the fishing excursion in August or September, 1910. He went there alone. At the time he got there his younger brother was in the saloon with his father. He remained there about 15 or 20 minutes, but did not remember whether his brother stayed that long or not, but thought he did. After that occasion he was in the saloon several other times, was unable to give the dates, but stated that it was after the summer of 1910 and before his father's death. He was there every Saturday night for three months prior to his father's death. During the times he was in the saloon he remained in there from five to eight or ten minutes. He saw Haberzettle and his bartender, and several people whom he designated by name, in the saloon, and stated that they were drinking and talking and sitting around. On cross-examination he said his father was in there every time he went there, and that he went for the purpose of getting him out. He would usually stay about four or five minutes at a time, except upon the first occasion, when he was there about 20 minutes. He could rarely ever get his father out, and would go out without him. Horace Haynes, who was the younger of the two boys, testified to being in the saloon on two occasions. The first time was when the fishing excursion was planned, and he remained in there about 15 or 20 minutes. The next occasion was some time afterwards. He went in to see his father about getting some money to buy school books, and was in there about five or ten minutes at that time. The men were drinking, talking, joking, laughing, and cursing. His father was in there on both occasions. On the occasion of the picnic he went in there to get his father, but he did not succeed. His father did come out afterwards and get in the wagon, and went off with them. It is admitted in the record that Haberzettle was legally engaged in the business of retailing intoxicating liquors under a license issued by the state, and that he had executed a bond in accordance with the requirements of law.

The court gave the following charge to the jury: "If you find and believe from the evidence that the minor sons of plaintiff, or either of them, entered the saloon or place of business of defendant on or about the time set out in plaintiff's petition, or at any of such times, and that said entry into said saloon by said minors or either of them was for the purpose of getting their father out of said saloon, and that said minors or either of them remained in said saloon only a sufficient time to accomplish the purpose for which they entered, then, in that event, for the time or times so entered you will find for the defendant." The appellant requested this charge, which was refused: "You are instructed that if you believe from the evidence that plaintiff's minor sons entered defendant's saloon on or about the dates alleged in her petition, and that their purpose was to request their father to go home, and you further believe from the evidence that said minors remained in said saloon a sufficient length of time to see men drinking and to hear men cursing and talking, then you will find for plaintiff $500 for each time you believe said minors or either of them so remained in the defendant's saloon." The appellant contends that the charge given practically amounts to a peremptory instruction to find for the defendants. The appellees cite as supporting that charge the following cases: Cox v. Thompson, 32 Tex. Civ. App. 572, 75 S. W. 819; Tinkle v. Sweeney, 97 Tex. 190, 77 S. W. 609; Ghio v. Stephens, 78 S. W. 1084; Douthit v. State, 98 Tex. 344, 83 S. W. 795. Cox v. Thompson was a suit upon a liquor dealer's bond in which the court charged the jury that the term "enter and remain" meant "that a person under the age of 21 must have entered and remained in the house or place for retailing spirituous liquors with the knowledge and consent, etc., and the length of time he so remained therein, if any, was immaterial." Chief Justice Fisher, in an opinion reversing the case, held that this was error, and said: "Whether a party remains in the saloon so as to bring the offense within the meaning of the law is a question of fact for the jury. * * * The Legislature in framing the law upon this subject did not see fit to prohibit a mere entry upon the premises, but the prohibition extends to an entry and remaining; and if the minor enters the premises for a lawful purpose, and the facts and circumstances indicate that it was not his intention to remain, and he did not remain, but immediately upon the accomplishment of the purpose for which he entered he departed, there would be no violation of the law, unless it was the purpose to hold the owner of the premises responsible for a bare entry, which is clearly not the case. This view may be opposed to what is said by the court in Qualls v. Sayles [18 Tex. Civ. App. 400] 45 S. W. 839." This case never reached the Supreme Court, for the reason that it was reversed and remanded. In Ghio v. Stephens a recovery upon a liquor dealer's bond was sought for selling to a minor and for permitting the minor to enter and remain on the premises. The facts show that the minor was a boy about 16 years of age. He went

into the defendant's saloon, and purchased a bucket of beer for 10 cents, and immediately walked out. The charge of the court authorized a recovery upon both, or either, of the causes of action set out in the petition. The court held, under the authority of Tinkle v. Sweeney, that he was not entitled to recover. Tinkle v. Sweeney was decided by the Supreme Court upon certified questions. It was also a suit to recover upon a liquor dealer's bond for permitting a minor to enter and remain upon the premises. The testimony set out in the certificate shows that the minor went into the saloon for the purpose of getting a check cashed, and immediately upon this being done he bought an intoxicating drink and remained there only long enough to drink it, and then went out. The Supreme Court held that this conduct did not constitute "entering and remaining" within the meaning of the statute. It holds that a penalty was provided by law for making the sale, and there was no good reason for imposing another penalty for remaining there during the time the sale was being made. The court says: "It seems to us that this was not intended, but that the Legislature considered that there were two evils which ought to be repressed—one the purchase of intoxicating liquors by minors, and the other the immoral influence resulting to them from tarrying or loitering in the place where such liquors are sold." The court refers to the case of Qualls v. Sayles, and says that it is distinguishable upon the facts, but leaves the question as to whether or not it is distinguishable upon principle undetermined.

Douthit v. State contains another adjudication by our Supreme Court. The facts in that case show that the minor was approximately 18 years of age. He testified that on the date mentioned he went into the saloon for the purpose of helping the proprietor to fix a gasoline lamp; that the proprietor asked him to come in and assist him as he was walking by the door. He walked in, discovered that he had never seen a lamp just like that one, and that he was unable to fix it, and walked out, remaining in the saloon only a minute or two. The proprietor testified that the minor was working at a restaurant, and was well known to him; that on this occasion his gasoline lamp was out of order, and just as the boy passed by he asked the latter if he could fix the lamp; that the boy came into the house, walked around the lamp, looked at it, said he never had seen one like it before, and walked out; that he remained there just about 10 or 15 seconds. The court held under this evidence that there was no liability for entering and remaining upon the premises, and said: "In this case the minor did enter and remain, at least momentarily, within the express terms of the statute, but we think that this remaining under the circumstances comes within neither the spirit nor the reason of the law."

After reviewing the case of Tinkle v. Sweeney and the grounds upon which the decision of that case was placed, the court continued: "It also appeared in that case [Tinkle v. Sweeney] that the minor entered to get a check cashed, and that he must have remained long enough to accomplish that purpose; and, while that point was not discussed in the opinion then delivered, it indicates that we did not think it was a violation of the statute for a minor to enter a saloon to attend to a matter of business which admitted of prompt dispatch, and to leave as soon as his business was transacted. We think, however, that if the minor had been permitted to enter and remain for a considerable time, though his tarrying be merely for the transaction of business, the case would be different." The court then refers to the case of Goldsticker v. Ford, 62 Tex. 385, in which it was held that the consent of the mother to the employment of the minor son in a retail liquor dealer's establishment did not shield the dealer from a recovery on his bond.

[2, 3] From these decisions the following conclusions may be drawn: (1) Ordinarily the question of whether or not there has been an entering and remaining sufficient to create a liability upon the bond of a retail liquor dealer is one of fact to be determined, like all similar issues, by the court or the jury. (2) Where the minor enters the saloon, makes a purchase of liquor which may not lawfully be sold to him by the proprietor or his agent, and remains only long enough to complete that transaction, the offense will be referred to another provision of the bond specifically covering such conduct, and no other liability will be imposed for the same infraction. (3) Where the minor enters the saloon for any purpose and stays only momentarily, or for so brief a space of time that his presence could not in the common acceptation of the terms be defined as remaining in the saloon, no liability will be imposed under the conditions of the bond for permitting him to enter and remain.

In both Cox v. Thompson and Ghio v. Stephens the judges who wrote the opinions used language which indicated an intention to hold that if a minor entered the saloon for a lawful purpose, and retired as soon as that purpose was accomplished, there would be no liability for entering and remaining. Such a holding, however, was not necessarily involved in the determination of the questions presented in either of those cases, and what was there said may be treated as dicta. But, whether so treated or not, such holding cannot be reconciled with the language used in the Douthit Case, a later adjudication by our Supreme Court. Qualls v. Sayles et al., 18 Tex. Civ. App. 400, 45 S. W. 839, was decided by the Court of Civil Appeals for the First District. The suit was by a father on the bond of a retail liquor dealer to recover damages for permitting his minor son to enter and remain in the saloon. The evi-

dence showed that the minor was 18 years of age and entered the saloon on this occasion with other parties who bought the drinks. The testimony was conflicting as to whether the minor drank beer or soda water, but it was shown that he remained long enough to drink that which was set before him, and then left of his own accord. Upon this evidence the Court of Civil Appeals reversed the judgment of the trial court, and rendered a judgment in favor of the plaintiff in the suit. McElroy v. Sparkman, 139 S. W. 529, was decided by the Court of Civil Appeals for the Fifth District, and a writ of error was refused by the Supreme Court. The suit was by a mother upon a liquor dealer's bond for selling liquor to her minor son, and for permitting him to enter and remain in the saloon. The evidence, in brief, shows that on a previous occasion the defendant had sold liquor to the minor; that on the date in question the minor again went inside of the saloon, at the invitation of the proprietor, to get an order which was written by the latter to be signed by the minor's mother authorizing sales to her son. This order was to be dated back, so the testimony shows, in order to cover the former offense. The minor remained only long enough for the order to be written and delivered to him, and then retired. The court affirmed a judgment in favor of the plaintiff. The affirmance, however, seems to have been based, in part at least, upon the conclusion that the evidence showed that the stay in the saloon was for a wrongful purpose—that of manufacturing evidence to be used in another trial. The refusal of the writ of error by the Supreme Court did not involve necessarily the approval of that conclusion as the proper and only reason for affirming the judgment.

Coming, then, to the consideration of the present case, it would seem that the court in giving the charge complained of virtually took from the jury the only issue of fact upon which a verdict could have been returned in favor of the plaintiff when it told them that if they believed the boys entered the saloon for the purpose of getting their father out, and remained only a sufficient length of time to accomplish that purpose, to find for the defendants as to such times. There was no evidence that the boys went there for any other purpose at any time. On the contrary, according to their own testimony and that of their mother, that was their object upon every occasion but one, and that was when the smaller boy went in search of his father for money with which to buy school books. The question presented is, Was the purpose referred to by the trial court a defense in this case? We have reached the conclusion that it could not be so held as a matter of law.

[4, 5] The minor is not himself prohibited from entering and remaining in a place where intoxicating liquors are sold for the transaction of any business not otherwise unlawful.

The statute in terms makes the proprietor of such a place liable on his bond for permitting the minor to enter and remain for any purpose, whether it be lawful or unlawful. None of the qualifications so far imposed by our Supreme Court have made the lawfulness of the purpose for which the minor was allowed to enter and remain the test of liability. The Legislature had the right to provide against minors entering and remaining in such places for any purpose whatever, and it is not for the courts to attach a qualification which the language of the law does not warrant nor the rule of reason make necessary. As stated by Justice Stayton in Goldsticker v. Ford: "The purpose of this law was to shield the youths of the country from associations and influences which the warnings of the past show are likely to lead them into dissipation; corrupt their morals, and start them perhaps on a course of life that leads to vice and even crime, to which they would not tend but for hurtful associations." To enter and remain in a place means to enter therein, and, after having done so, to stay there for some indefinite length of time longer than is required for an immediate exit. To hold that the term "remaining" as used in liquor dealers' bonds means tarrying after the execution of some purpose not unlawful in itself for the minor to do would practically nullify this provision of the bond. Of course, occasions may occur, or emergencies arise, where the circumstances under which a minor is permitted to enter and remain in a saloon, even for a considerable length of time, would be sufficient to excuse the act. But this would follow because the conditions and circumstances existing at such times were so unusual or extraordinary that it should not be said that the transaction was within the spirit of the law. Such might be the case when to require the dealer to observe the letter of the law would inflict a hardship on the minor greater than the evil which the law was intended to prevent. We may admit, for the sake of argument, that when the first visit of those boys to that saloon was made for the purpose of getting their father away, giving them permission to enter and remain there long enough to make a reasonable effort to accomplish their purpose would not violate the spirit of the law, and constitute an infraction of the bond. But to hold that excuse available to cover the repeated visits thereafter made by both or either of the boys would be extending a liberality too generous to the defendant to comport with the manifest object of the law itself. Haberzettle and his clerks must have known the weakness of Haynes for intoxicating liquor, and of his habit of drinking to excess regularly every Saturday evening after having received his weekly wages. Evidently they sold him a portion at least of the liquor which caused his intoxication, and with full knowledge of what would likely follow;

that is, that he would continue to drink till he became so drunk as to lose all sense of that duty which he owed to his family, and that he would probably remain in that saloon till it was closed for the night. They must have known from the repeated failures, if not from the very nature of the circumstances, that such visits from these small children for such a purpose could result in accomplishing nothing towards removing their unfortunate parent from the associations which he had voluntarily sought and which seemed to be so congenial to his tastes and appetite. The most they could be expected to do after having gone inside of the saloon was to stand and look upon their father's degradation and witness the usual scenes incident to saloon traffic. It is true that it would appear harsh and cruel to turn those children away when they approached the saloon in search of their drunken father with a view of carrying him home; but it does not lie in the mouth of the man who, knowing the father's weakness, had sold him the liquor that produced his intoxication, to invoke this humane impulse to excuse his statutory liability.

We think for the errors discussed the judgment of the court should be reversed and the cause remanded, and it is so ordered.