## SCHOW BROS, Inc., v. ADVA–TALKS CO. (No. 1795.)

(Court of Civil Appeals of Texas. Amarillo. June 8, 1921. Rehearing Denied June 29, 1921.)

1. **Monopolies** ☞17(1)—**Advertising cuts are not "commodities" within Anti-Trust Act.**

Within Rev. St. 1911, art. 7798, making it a conspiracy in restraint of trade to make an agreement to refuse to buy or sell any article of merchandise, produce, or commodity, cuts to be used for advertising purposes in connection with advertising service, and which were not intended to be bought for resale, since their value would be destroyed by general use in the community, are not commodities, so that a contract, forbidding the sale of such cuts by the buyer, is not a violation of the Anti-Trust Act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commodity.]

2. **Monopolies** ☞10 — **General expression of purpose of statute is limited by specific definitions thereafter.**

The general language of Rev. St. 1911, art. 7796, was intended only as an expression of the purpose of the law, and is limited by the specific definitions of the prohibited acts in the subsequent portions of the section, so that a contract which is not within the specific language is not void, though the general language was broad enough to include it.

Appeal from Dallas County Court; T. A. Works, Judge.

Suit by the Adva-Talks Company against Schow Bros., Incorporated, to recover the amount due on a contract. Judgment for plaintiff, and defendant appeals. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellant.

Thurman, Nicholson & Saxon, of Dallas, for appellee.

BOYCE, J. The Adva-Talks Company sued Schow Bros., to recover an amount alleged to be due on a contract between the said parties, under the terms of which the Adva-Talks Company furnished Schow Bros. the advertising material and matter referred to in the contract. The disposition of the case requires a conclusion by us, as it did by the trial court, as to two questions: First, whether the contract was made in behalf of the Schow Bros. Company by such an agent and under such circumstances as to bind it; second, whether the contract was void as being in violation of the provisions of the anti-trust laws of this state. The trial court held against appellant on both questions, and rendered judgment on the contract for the appellee.

The first question presents largely a question of fact as to which we think the evidence amply sustains the conclusion of the trial court, and we do not consider it necessary to discuss such question further than to announce our approval of the holding of the trial court on it.

The contract sued on was evidenced by a written order executed by Schow Bros., and addressed to the Adva-Talks Company. So much of it as is necessary to be considered in the disposition of the second question suggested is as follows:

"Ship to us at once as per list advertising service, consisting of 156 pieces adv., copy, 156 column cuts. We agree to accept this service and pay you net cash, etc. * * * We to have the exclusive right to use the above advertising service in this city only and all cuts and advertisements to become our property for this purpose. We have no right to use said service or said cuts in any other town and to have no right to permit anybody else to use said service or said cuts at any time."

The trial court made the following findings of facts in this connection, which we adopt:

"The plaintiff has an office in the Southwestern Life Building, Dallas, Tex., and has a plant in Oak Cliff, an addition to the city of Dallas, where its printing, stereotyping, stockroom, and shipping department is located. That the stere-

otypes are manufactured by plaintiff in its plant, and a few are carried in stock. That plaintiff has expert copy writers, cartoonists, and it has parties to write ads and to make drawings, from which cuts are made that are appropriate in advertising particular businesses or lines; for example, there are any number of ads, illustrations, and cuts that plaintiff has or may make or manufacture, advertising the drug business in its various lines. That it has these various cuts, illustrations, etc., to various businesses, as hardware stores, grocery stores, banks, etc. That when an order is taken, as was done in this case, covering various businesses, such as hardware, lumber, etc., and describing the particular cuts wanted, they are supplied from the stockroom of plaintiff, if possible, and if they cannot be supplied from stock on hand the ad writers prepare special advertising and cuts to fill the order. It is the purpose of the business of the plaintiff to sell advertising service and aid their customers in selling their product, but that it is not intended that the advertising, cuts, and advertising matter sold by the plaintiff be resold or to become merchandise or wares for sale. That plaintiff only sells one party in the same town; for example, plaintiff would sell advertising matter to one banker in the same town at a time, the purpose being to give their customer something different and up to date from his competitor in the same town. That part of the cuts furnished by the Adva-Talks Company are copyrighted, though it is not positive whether any of the cuts sent to the defendant were copyrighted. Twenty-one special ads were prepared in order to fill the lumber ad, called for by the contract, and 14 special ads for the dry goods line and furniture line furnished to defendant under said contract. That the most important part of the service furnished defendant under said contract was the composing of said special ads. That which is furnished by plaintiff to defendant or other parties is service or an aid in selling the merchandise of their customers. It is not clear whether the name of Schow Bros. was on any of the cuts or copy furnished Schow Bros. by the Adva-Talks Company. That many of the advertisements or illustrations furnished the Schow Bros. could have been used by other parties who were in the exact line of business as the Schow Bros. That plaintiff sent to Schow Bros. 156 different ads, 35 of which were specially written. That many of the cuts and illustrations furnished cost from $15 to $25 to have manufactured. The illustrations or cartoons were drawn by John Knox of the Dallas News, and men of his ability."

The advertising matter referred to in the above order was shipped to the defendants within due time.

[1] It is claimed that the above contract is in violation of the provisions of the first section of article 7798, R. S., which is as follows:

"Either or any of the following acts shall constitute a conspiracy in restraint of trade: 1. Where any two or more persons, firms, corporations or associations or persons, who are engaged in buying or selling any article of merchandise, produce or any commodity, enter into an agreement or understanding to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

It is argued that the cuts which the advertising company furnished to Schow Bros. under the contract are commodities within the meaning of this law. The advertising company was not engaged in selling the cuts as articles of merchandise, produce, or commodities. The cuts were furnished as incidents, a means of reproducing the advertising material, consisting in part of the illustrations, which was the subject of the sale. It was thus selling service in the form of advertising material prepared by experts, as in aid to Schow Bros.' business, as Schow Bros. were not engaged in buying or selling these cuts generally. So that the case we think is governed by the principles announced in the case of Forrest Photographic Co. v. Hutchinson Grocery Co., 108 S. W. 768. The purpose of the Anti-Trust Law was to "promote free competition" (see caption of the act of 1903) to the benefit of the public or the individual buying and selling the articles of merchandise, produce, or commodities referred to in the law. The value of the use of advertising material depends on exclusiveness. Some features of advertising material used by a merchant might acquire an individuality that would entitle him to its exclusive use, and its copy by a competitor be regarded as "unfair competition." Kimball v. Hall, 87 Conn. 563, 89 Atl. 166, L. R. A. 1916E, 632, 26 R. C. L. 892, 38 Cyc. 846. No one could be interested in having the advertising service or material or cuts which the plaintiff was contracting to sell defendant made the subject of general sale and barter, as that would result in the destruction of their value to any one. We think it clear that it was "not the intent and purpose of the Legislature" to make unlawful a contract such as this, and do not think the language of the statute is such as to require a holding that would give an effect to the law that was never contemplated by the lawmakers. Runnels v. Belden, 51 Tex. 48; Douthit v. State, 98 Tex. 344, 83 S. W. 798.

[2] For the same reasons we do not think that any of the provisions of article 7796 of the statute are applicable to this case. If some of the general language of the first section of this article be broad enough to include the contract in question, it was held by the Supreme Court, in the case of Queen Insurance Co. v. State, 86 Tex. 250, 24 S. W. 398, 22 L. R. A. 483, that the general provisions of this section of the act "were intended only as a general expression or purpose of the law, and that the acts defined in the subsequent members of the section were intended as a specific definition of what was

meant in the first." This holding of the Supreme Court was made before the amendment of 1903, but we held, in the case of Palatine Insurance Co. v. Griffin, 202 S. W. 1023, that the act of 1903 is subject to the same construction in this respect as was placed by the Supreme Court upon the law which it amended. If we are correct in the conclusion we have reached in our consideration of the provisions of article 7798, it follows that none of the other provisions of article 7796 are applicable to this contract.

We are of opinion that the judgment of the trial court should be affirmed.

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes