## ST. JOHN *v.* NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 210. Argued March 14, 1906.—Decided April 16, 1906.

A State may classify persons and objects for the purpose of legislation, provided the classification is based on proper and justifiable distinctions; and so *held* that chap. 338 of the laws of New York of 1893, prohibiting the sale of adulterated milk, is not in conflict with the equal protection clause of the Fourteenth Amendment because in certain respects, it provides different prohibitions and penalties as to producing and non-producing vendors of milk.

The facts are stated in the opinion.

*Mr. William Brennan, Jr.,* for plaintiff in error.

*Mr. Horace McGuire,* with whom *Mr. Julius M. Mayer,* Attorney General of the State of New York, was on the brief, for defendant in error.

. Mr. Justice McKenna delivered the opinion of the court.

Plaintiff in error is a non-producing wholesale and retail milk dealer in the city of Buffalo, New York. In February, 1903,

he exposed for sale and sold a quantity of milk in violation of sections 20 and 22 of chapter 338 of the laws of New York for the year 1893, and its amendments and supplements, in that the said milk contained more than 88% of water and less than 12% of milk solids, to wit, 89.24% of water and 10.36% of milk solids.

The Commissioner of Agriculture of the State in pursuance of said laws filed a complaint against plaintiff in error in the Supreme Court of the State, charging him with the violation of the laws, and that it was his second offense. Judgment was prayed for the sum of $200 in pursuance of section 37. Plaintiff in error admitted the charge, but alleged in defense that the laws were in contravention of section 1 of the Fourteenth Amendment of the Constitution of the United States; also of the constitution of New York.

At the trial he offered to show that the milk from which the sample exhibited in the case was taken was in the same condition when the sample was taken as it was when it left the herd of the producer. The testimony was rejected and plaintiff in error excepted. The court directed the jury to find a verdict against him for $100 and costs, which was done. He excepted to the ruling. Under the procedure in New York the court ordered the exceptions to be heard in the Appellate Division. In that court the exceptions were overruled, a motion for a new trial was denied and judgment entered on the verdict. On appeal, the Court of Appeals affirmed the judgment, and the record and proceedings were remanded to the Supreme Court, where judgment was entered in accordance with the remittitur from the Court of Appeals. This writ of error was then sued out.

The purpose of the law which is assailed is to prevent the sale of adulterated and unwholesome milk. Section 20 [1] de-

---

[1] Sec. 20. Definitions. . . .

The term, adulterated milk, when so used, means:

1. Milk containing more than eighty-eight per centum of water or fluids.
2. Milk containing less than twelve per centum of milk solids.
3. Milk containing less than three per centum of fats.

fines what milk shall be deemed adulterated, and it gives a
very comprehensive meaning to the word. Section 22 pro-
hibits the sale or offering for sale of such milk, or "any unclean,
impure, unhealthy, adulterated or unwholesome milk." Sec-
tion 7 makes intention immaterial. Section 37 provides for
the forfeiture to the People of the State of New York of not
less than $50 for the first violation of the law, and increased
sums for second and subsequent violations, and also makes
violations of the law misdemeanors. Section 12 is the one
which is especially complained of. It was materially amended
in 1898, and is (omitting matter not necessary to quote) as
follows:

"Sec. 12. Inspection, how conducted. . . . In taking
samples of milk for analysis at a creamery, factory, platform
or other place where the same is delivered by the producer for
manufacture, sale or shipment, or from a milk vendor who
produces the milk which he sells, with a view of prosecuting
the producer of such milk for delivering, selling or offering for
sale adulterated milk, the said Commissioner of Agriculture or
assistant or his agent or agents shall, within ten days there-
after, with the consent of said producer, take a sample in a
like manner of the mixed milk of the herd of cows from which
the milk first sampled was drawn and shall deliver the dupli-
cate sample to the said producer and shall cause the sample
taken by himself or his agent to be analyzed. If the sample of

---

4. Milk drawn from cows within fifteen days before and five days after
parturition.

5. Milk drawn from animals fed on distillery waste or any substance
in a state of fermentation or putrefaction or any unhealthy food.

6. Milk drawn from cows kept in a crowded or unhealthy condition.

7. Milk from which any part of the cream has been removed.

8. Milk which has been diluted with water or any other fluid, or to which
has been added or into which has been introduced any foreign substance
whatever.

All adulterated milk shall be deemed unclean, unhealthy, impure and
unwholesome.

Sec. 22. Prohibition of the sale of adulterated milk.—No person shall
sell or exchange, or offer or expose for sale or exchange, any unclean, im-
pure, unhealthy, adulterated or unwholesome milk. . .

milk last taken by the Commissioner of Agriculture or his agent or agents shall upon analysis prove to contain no higher percentage of milk solids, or no higher percentage of fat than as the sample taken at the creamery, factory, platform or other place, then no action shall lie against the said producer for violation of subdivisions one, two, three, seven and eight of section 20 of the Agricultural Law. In taking a second sample, as above set forth, from the mixed milk of the herd, it shall be the duty of the Commissioner of Agriculture to have an assistant, agent or agents present during the entire time in which the said cattle are being milked to observe closely so as to be sure that the milk thus to be sampled is not adulterated, and to see that it is thoroughly mixed so that the sample taken shall be a fair sample of the average quality of the mixed milk of the entire dairy or herd of cows of said producer. If, however, the said producer refuses to allow such examination of the milk produced by his dairy, then he shall be precluded from offering any evidence whatever tending to show that the milk delivered by him at the said creamery, factory, platform or other place was just as it came from the cow. If the said producer does permit such examination the Commissioner of Agriculture shall, upon receiving application therefor, send to said producer a copy of the analysis of each of the samples of milk so taken and analyzed as above provided."

The contention of plaintiff in error is that non-producing vendors are discriminated against, and hence denied the equal protection of the laws, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States, in that they may not, as producing vendors may, exempt themselves from actions or penalties for violations of subdivisions one, two, three, seven and eight of section 20 by showing that the milk sold or offered for sale by them is in the same condition as when it left the herd of the producer.

It has been decided many times that a State may classify persons and objects for the purpose of legislation. We will assume the cases are known and proceed immediately to con-

sider whether the classification of the law is based on proper and justifiable distinctions, considering the purpose of the law and the means to be observed to effect that purpose.

By referring to section 20 it will be observed that adulterated milk, as there defined, includes not only that to which something has been added, but milk from which the cream has been removed, or which is deficient naturally in certain substances, or taken from cows fed on certain things, or cows in certain conditions when milked. In other words, the purpose of the law is to secure to the population, adult and infant, milk attaining a certain standard of purity and strength. All other milk is declared to be "unclean, impure, unhealthy, adulterated or unwholesome."

It is not contended that such purpose is not within the power of the State but, it is contended, that the power is not exercised on all alike who stand in the same relation to the purpose, and quite dramatic illustrations are used to show discrimination. A picture is exhibited of producing and non-producing vendors selling milk side by side; the latter, it may be, a purchaser from the former; the act of one permitted, the act of the other prohibited or penalized. If we could look no farther than the mere act of selling, the injustice of the law might be demonstrated, but something more must be considered. Not only the final purpose of the law must be considered, but the means of its administration—the ways it may be defeated. Legislation to be practical and efficient must regard this special purpose as well as the ultimate purpose. The ultimate purpose is that wholesome milk shall reach the consumer, and it is the conception of the law that milk below a certain strength is not wholesome, but a difference is made between milk naturally deficient and milk made so by dilution. It is not for us to say that this is not a proper difference, and regarding it the law fixes its standard by milk in the condition that it comes from the herd. It is certain that if milk starts pure from the producer it will reach the consumer pure, if not tampered with on the way. To prevent such tampering the law is framed and

its penalties adjusted. As the standard established can be proved in the hands of a producing vendor, he is exempt from the penalty; as it cannot certainly be proved in the hands of other vendors so as to prevent evasions of the law, such vendors are not exempt. In the one case the source of milk can be known and the tests of the statute applied; in the other case this would be impossible, except in few instances. We cannot see that any particular hardship results. The non-producing vendor must exercise care in his purchases, and good all around may be accomplished. Through penalty on the non-producing vendor the producer is ultimately reached, though he may seem to be indulged. He will have to raise the standard of the milk of his herd if he would keep or extend his trade, as anything but a mere retailer of his product.

*Judgment affirmed.*