## EX PARTE M. L. BRADSHAW.

### No. 2298. Decided April 16, 1913.

Rehearing denied May 14, 1913.

**1.—City Charter and Ordinance—Peddler—Constitutional Law—Class Legislation.**

Where a city, under a special charter, was authorized to control the streets, etc., and to prevent peddlers and hawkers from carrying on their business on said streets, etc., and thereunder enacted an ordinance making it unlawful for anyone to use said streets and alleys embraced within the fire limits of said city for the purpose of selling merchandise or peddling goods, etc., and provided therein that said ordinance should not apply to any person who himself offered for sale any produce raised or grown upon the property owned or rented by him or under his control, the same is not invalid on the ground that it is class legislation. Following Henson v. State, 49 Texas Crim. Rep., 177, and other cases. Davidson, Presiding Judge, dissenting.

**2.—Same—Constitutional Law—Not Class Legislation—Equal Rights.**

A city ordinance which prohibits peddlers from selling on the streets of the city or peddling goods thereon, and authorizes other persons to sell on its streets within its fire limits any products raised or grown upon their property, rented by them' or under their control, is not violative of section 3, article 1, Constitution of Texas, providing that all free men have equal rights, etc. Davidson, Presiding Judge, dissenting.

**3.—Same—Streets—Markets—Public Places—Vested Rights—Classification—Peddling.**

Persons have no vested right to make marts of the streets, alleys, and other public places in any incorporated town, and the Legislature, as well as municipal corporations, where authorized by their charter, may classify persons according to their business and may apply different rules to those which belong to different classes. Following Green v. State, 49 Texas Crim. Rep., 380; Wade v. Nunnelly, 46 S. W. Rep., 668, and other cases.

**4.—Same—Classification—Discrimination—Judicial Construction.**

Where city ordinances have been held invalid and violative of section 3, article 1, Constitution of Texas, it was because they excepted from the opera-

tion of the Act other persons within that class, nevertheless, the Legislature or municipal corporations, when authorized by their charters, have the right and power to make classes which are founded upon some just basis, and tax, regulate or prohibit one class and not the other. Distinguishing Ex parte Jones, 38 Texas Crim. Rep., 482, and other cases. Davidson, Presiding Judge, dissenting.

### 5.—Same—Case Stated—Reasonable Classification.

Where, by special charter, a city was authorized to pass ordinances regulating the use and control of the streets and to regulate and prevent the vending of merchandise on the said streets, etc., and thereunder passed an ordinance prohibiting vending and peadling of goods, wares, and merchandise on said streets within the fire limits, and exempted persons who offered for sale their own products, etc., and the relator in violation of said ordinance peddled apples upon such streets and public places within the fire limits, which he had not grown himself. Held, that such classification was valid and reasonable, and relator was remanded to custody. Davidson, Presiding Judge, dissenting.

### 6.—Same—Public Square—City—County.

Where relator was arrested for violating the city ordinance by peddling apples on the public streets of the city, and contended that he had permission of the county authorities to peddle on the public square around the courthouse, but it was shown that the said public streets and public square were used and controlled by said city, his contention that the fee and title of the public square was in the county was no defense.

### 7.—Same—Stating Facts in Opinion—Peddler.

Where the relator claimed, in his motion for rehearing, that this court had misquoted the testimony in deciding that relator was a peddler, but the statement of facts in the record clearly bore out the court in its conclusion, there was no error.

Appeal from the County Court of Hill on habeas corpus proceedings tried in vacation before the Hon. J. D. Stephenson.

Appeal from an order of the county judge of Hill County remanding relator to the custody of the officer, for violating the city ordinance which prohibited the vending and peddling of goods, wares, and merchandise on the streets of an incorporated city.

*Luther Nickels,* for relator.—I. The order of the county judge of Hill County, Texas, remanding relator to the custody of the city marshal of the City of Hillsboro, Texas, was error, because the ordinance under which he is being prosecuted and by virtue of which he was arrested and held in custody is void as being in contravention of section 3 of article I, Bill of Rights, of the Constitution of the State of Texas, because said ordinance involves class legislation and does not grant to all persons equal rights under the law.

The ordinance in question reads as follows:

"Section 3. It shall hereafter be unlawful for any person to use the streets or alleys embraced within the fire limits of the City of Hillsboro, for the purpose of vending or displaying goods, wares, merchandise or produce or other articles or for the purpose of peddling goods, wares, merchandise, produce or other articles; provided, however, that this section shall not apply to any person who himself offers for sale

any products raised or grown upon the property owned or rented by him or under his control.

"Section 7. Any person violating any of the provisions of this ordinance shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding twenty-five dollars."

Relator was charged with such unlawful displaying and vending of such products,—apples and potatoes,—not grown upon his own land or land rented by him or under his control.

Persons who have raised such products upon their own land or land rented or controlled by them are allowed to vend and display for sale such products upon such streets within such fire limits without protest and with impunity.

In the case of Ex parte Jones, 38 Texas Crim. Rep., 482, the validity and constitutionality of a provision of the occupation tax law was involved. This provision, it was there contended, was void and unconstitutional because "It exempts from the payment of such occupation tax, blind, deaf, and dumb persons, wounded persons who have lost a hand or foot, all ex-Confederate and ex-Federal soldiers, who, from old age or other cause, are incapacitated to do and perform manual labor, who are actual residents of the State of Texas, and are not inmates of any soldier's home or drawing any pension from the United States or any State government, and traveling vendors of poultry, etc., if raised or produced by the vendor or his family."

Speaking to these objections to the law, this court, through Judge Henderson, said:

"Without discussing the first three of said objections (that is, objections other than those quoted above), it occurs to us that the exemptions enumerated in applicant's fourth subdivision (the objections quoted above) makes said occupation tax law . . . clearly obnoxious to the provisions of the Constitution above set out (that is the provisions with reference to uniformity of taxation). . . . Some of the exemptions enumerated would appear to have strong claims, and entitled to consideration at the hands of the law-making power if the Constitution did not intervene and inhibit such action. . . . Section 3 of our Bill of Rights would appear to inhibit any class legislation and is as follows:

"Section 3. All free men when they form a social compact have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services."

A proper construction of these constitutional provisions together with an application of same to the occupation tax provision before quoted would appear to settle this question in favor of the applicant; for unquestionably the act exonerates and exempts from taxation, and constitutes certain classes therein named, privileged classes, who are authorized to pursue the occupation of peddling without the payment of any tax or the procurement of any license. This is obviously taxation which is not equal or uniform.

In the case of the Pullman Palace Car Co. v. State, 64 Texas, 274, Judge Stayton said:

"If the things done constitute in one person or corporation the taxed occupation, no one doing the same things can be omitted from the class taxed without a violation of the constitutional provisions, even though the omitted or excepted person or corporation may do more òr other things than are necessary to constitute the taxed occupation, and though that done in excess may within itself constitute a distinct occupation subject to taxation, however kindred in nature the occupation may be. The Legislature may classify subjects of taxation, and these classifications may, as they will be, more or less arbitrarily; but, when the classification is made, all must be subjected to the payment of the tax imposed, who, by the existence of the facts on which the classification is based, fall within it, unless exempted under some other constitutional provision."

We submit that the rule of construction of the constitutional provisions with reference to taxation, as discussed in the two cases cited, apply, also, to the exercise of the police power or any other power granted by the Constitution. Ex parte Woods, 52 Texas Crim. Rep., 575, 108 S. W. Rep., 1171, and other authorities cited in Ex parte Jones, supra.

The City of Hillsboro contends that it had full power to pass and enforce the ordinance in question under any or all of the following provisions of the charter, towit:

1. "Section 62, subdivision b. To control, open, close, alter, widen, extend, construct, establish, maintain, regulate, grade, cleanse, pave or otherwise improve, embellish and ornament the streets, alleys, highways, sidewalks, and public grounds and places in said city; put drains and sewers therein; . . . to regulate and control the use thereof by any persons, animals, vehicles in whatever way and for whatever purpose."

If the ordinance was passed under, and has for its purpose the carrying out of the grant above stated, then it has reference, necessarily, to the last clause thereof, and its object would be to keep the streets open to travel and free of obstructions. This being true, or granted, then the ordinance is clearly discriminatory and is class legislation, because it is a fact of common knowledge, as well as of proof in this case, that the wagons and teams and outfits of the men who sell their own home-raised products upon the streets would take up as much space and obstruct the streets just as much as they would be obstructed by the wagons, teams, and outfits of those persons who would use them for the purpose of selling the same kind of products which they may have purchased. If such be the real, or granted purpose, then the classification and discrimination involved in the ordinance does not rest upon any real distinction or reason in fact, and becomes, therefore, an unreasonable and arbitrarily unjust classification and discrimination, and is, accordingly, void and unconstitutional. This question, under these conditions, is conclusively settled in favor of relator by the case of

G. C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150. Also by the case of Ex parte Wade, 66 Texas Crim. Rep., 181, 146 S: W. Rep., 179.

2. "To regulate and determine the mode of inspecting and vending of milk, milk products, flesh, meats, fish, fruits, vegetables, and other. provisions and to prohibit the sale of any tainted, or unwholesome meats, fish, vegetables, or other provisions, or any milk adulterated with water or anything whatever not constituting a part of pure milk, to make such rules and regulations in respect to butchers as may be deemed proper, to establish and erect markets and market houses and regulate market places and privileges."

The ordinance could not possibly be construed to be an effort to carry out the grants made in the above provision with respect 'to inspection, etc., of the products sold, or to prevent or prohibit the sale of tainted or unwholesome products, because no language is contained therein that could be construed to make reference to this object or to evidence an attempt to accomplish such object. If such was the purpose, is there any reason made apparent by common sense, or by human experience, or by the evidence, why it would not be as necessary to inspect the products offered for sale by the farmer, and to prohibit him from selling unwholesome things of food, as it would be to inspect the products attempted to be sold by the other vendor?

The same things must be said of the ordinance if it is based upon the latter part of the charter grant quoted, because no good reason can be found why a farmer's wagon and team and products will not occupy as much of the space of the streets of Hillsboro as will the peddler's outfit.

3. "To license, tax, regulate, suppress, and prevent, hawkers, peddlers, pawnbrokers, and dealers in all kinds of junk and second-hand goods, wares and merchandise, itinerant vendors of clothing or wearing apparel, or any other business or occupation which in the opinion of the city council shall be the proper subject of police regulations."

This grant, if valid, carries with it more power than is, or can be, exercised by any prince, potentate, principality, monarch, Legislature, Congress, or any other functionary of temporal authority, except, possibly, the Czar of the Russias. It needs no argument or authority to demonstrate the invalidity of this grant. Under it the city council could peremptorily close up and suppress any lawful business pursued in the City of Hillsboro; it could close the banks, the dry goods stores, or any other calling; its only limitation would be found in the sweet will of the members of the council. No such arbitrary power is lodged in any portion, or all, of our government, and least of all in the council of a municipality existing under twice delegated authority. This charter grant is void and unreasonable upon its face.

But conceding, arguendo, the validity of the grant, still it does not carry with it any authority to discriminate against certain members of a certain occupation and in 'favor of others. The classification at-

tempted, is unreasonable and is not based upon any real distinction, and it clearly falls within the rule announced in the cases last cited.

To illustrate the unreasonableness of the classification and the ordinance itself:

Suppose A resided upon and owned a farm outside of the city limits of Hillsboro, and among other things, or exclusively, produced apples, some or all of which he desired to sell in the city.

B resides near A, but has no apple orchard, but having some spare time he desires to employ himself in selling apples in the city. B buys a barrel of apples from A and loads them into his wagon and starts to the city to sell them. At the same time A loads his wagon with a barrel of the same kind of apples and accompanies B to the city.

They both reach the city and stop their wagons side by side upon the streets within the fire limits. Immediately from the prepared tomb of B's ambitions comes the sound of the law saying, "Thou canst not!" And even as the drums of his ears reverberate with the tidings of his disappointment, there comes again the same voice to A, saying, "Thou mayst!"

The fruit was of the same age and kind. The wagons and teams took up the same amount of space. Both A and B are supposedly free born American citizens, and yet one can pursue his calling unmolested while the earning arm of the other falls palsied to his side!

Such an anomalous condition can not exist in reason and good conscience. If it can exist under the law as it is written, then indeed have we fallen into the sear and yellow leaf.

II. The ordinance is void because it involves and constitutes an unreasonable interference with the pursuit of a lawful business.

Let it be borne in mind that the stated object of the ordinance is not to regulate the occupation, but to suppress and prohibit it altogether.

There being no intimation that the occupation is malum in se, but, on the contrary, it being admitted and a matter of common knowledge that the occupation is in fact a useful one, its prohibition in the chief market places of the city is an unreasonable interference therewith. Ex parte Wade, 66 Texas Crim. Rep., 181, 146 S. W. Rep., 179.

III. The ordinance is void because it contravenes the last clause of section 1, of article XIV of the Constitution of the United States in that it denies the equal protection of the law and seeks to deprive certain persons of their useful calling and consequent property rights without due process of law. G. C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150.

*Tarlton Morrow,* City Attorney of Hillsboro, for responden..——Now, in the first place, a presumption of constitutionality exists and the ordinance will be upheld unless it is clearly shown to be unconstitutional. 8 Cyc., 801.

The mere fact of a discrimination, or the making of classes, is not

of itself sufficient to condemn the ordinance, for "The Legislature may classify subjects of taxation, and these classifications may, as they will be, more or less arbitrary; but when the classification is made, all the subjects must be subject to the payment of the taxes imposed who by the existence of the facts on which the classification is based, fall within it." Ex parte Jones, 38 Texas Crim. Rep., 482, and cases cited.

This rule with reference to·classifications for taxation is the same as the rule with reference to classification for regulation. De Grazier v. Stephens, 101 Texas, 194.

Our first inquiry is whether or not, assuming the correctness of the classification, the ordinance operates equally upon all within the class. This answer is easy. For on glance it can be seen that no man may seek to offer products raised or grown by him within the exception is prohibited from making a sale.

This being answered, we are confronted with the proposition as to whether or not the classification as made is reasonable. To resolve this against the relator, we will undertake to first show that this classification has been upheld by many States, including Texas, and has been recognized as a proper line for demarcation for more than a century; second, good and valid reasons for the distinction.

Taking up the first matter, we refer the court to the case of State v. Montgomery (Maine), 43 Atl. Rep., 13, where the very distinction made in this ordinance was upheld. In this opinion it is stated, "Such (to make this distinction) has been the practice from the very earliest time. Mass. Ancient Charters, c. 21, sec. 5." Also see the case of People v. Sawyer (Mich.), 64 N. W. Rep., 333,. wherein it is stated that "By the statutes of 50 Geo. III, real workers and makers of goods within Great Britain were exempt from the payment of license which was imposed upon hawkers and peddlers. In many, if not in most, of the American States, these immunities are granted to mechanics and farmers selling their own products, and the power is not questioned."

Decisions of the State of Massachusetts upholding this distinction are cited with approval by Dillon, in sec. 706 of the fifth edition of his work on Municipal Corporations. The case referred to in that work, the one used in drafting the present ordinance, provided that no party shall sell on the market square without paying a license unless it be a farmer selling his own products. This ordinance was upheld against the contention that it constituted class legislation. In re Nightingale, 11 Pick., 167.

Now, as held by the courts of Texas, no one has a vested right to make a mart of the streets, alleys or other public places of the city. Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W. Rep., 668. When any market square is opened to public use by a city, every citizen has an equal right to occupy the same for selling his goods, subject to the regulations of the city. So everyone has an equal right to occupy the streets of the city, subject to reasonable regulation by the city. If a discrimination in favor of the man selling his own goods was properly

upheld in the Nightingale case, why should not the same discrimination be upheld as reasonable in this case?

Other cases supporting the correctness of this classification are Commonwealth v. Rice, 9 Met. (Mass.), 253; Wartman v. Philadelphia, 33 Pa. St., 202.

In our own State, art. 5049, sub. 21, Sayles' Ann. Statutes, this discrimination in favor of the man selling his own products has been recognized, and for years it has been acted upon without question. In the recent Statutes of 1911, a similar classification is brought forward. Art. 7355, sub. 11.

While this classification was not expressly upheld in the case of Ex parte Jones, 38 Texas Crim. Rep., 482, we believe that in fact it was. That case was construing article 5049, subdivision 21, which then provided that a tax should be placed on peddlers, except that persons selling their own products should be exempted, and except that Confederate soldiers should be exempted. This tax was held unconstitutional because of its exemption of Confederate soldiers. The reason is obvious in this: that one man selling goods not raised by himself would have to pay a tax and another man would not. But the court did not in that opinion hold the classification made not as to the man but the trade or peddling he was doing was not good. By inference it upheld this classification, and such must have been the opinion of the compilers of the late statutes, since they brought the classification forward.

This classification, it has been held, may be sustained not only on the theory of taxation but as well on the police power of regulation. State v. Montgomery, 43 Atl. Rep., 13. As a matter of fact, occupation taxes are really modes of regulation.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The City of Hillsboro, in Hill County, was duly incorporated by a special Act of the Legislature. Among other powers given by its charter, is the power "to control the streets, alleys, highways, sidewalks and public grounds and places in said city." Also "to regulate and control the use of said streets, alleys, etc., by any person, animal or vehicle in whatever way and for whatever purpose." Also to establish, and erect markets and market houses and designate "and control, and regulate market places and privileges." Also "to license, tax, regulate, suppress and prevent hawkers, peddlers, pawnbrokers, and dealers in all kinds of junk and second-hand goods, wares and merchandise, itinerant vendors of clothing or wearing apparel, or any other business or occupation which in the opinion of the city council shall be the proper subject of police regulation."

Under this power and authority said city duly passed and put into effect an ordinance regulating traffic upon the streets and alleys of said city within the fire limits, and regulating peddling, vending and exhibiting thereon, and providing fines for violation thereof. Section 3 of

said ordinance is: "It shall hereafter be unlawful for any person to use the streets or alleys embraced within the fire limits of the City of Hillsboro, for the purpose of vending or displaying goods, wares, merchandise or produce or other articles, or for the purpose of peddling goods, wares, merchandise, produce or other articles; provided, however, that this section shall not apply to any person who himself offers for sale any products raised or grown upon the property owned or rented by him or under his control."

Section 7 of said ordinance makes the violation thereof a misdemeanor punishable by fine not exceeding $25.

On December 12, 1912, proper complaint was filed against relator Bradshaw, a proper warrant issued for his arrest, and he was arrested by the city marshal and properly held thereunder. He thereupon sued out a writ of habeas corpus before the county judge of Hill County, claiming that he was illegally restrained of his liberty because the City of Hillsboro had no authority to pass such ordinance and it is void. The county judge heard the evidence and argument, and remanded the relator to the custody of the marshal, from which this appeal is prosecuted.

The further facts show that on December 12, 1912, relator was a peddler selling apples which he had in his two-horse wagon; that he made a sale therefrom while he was on the public square in what was shown to be a part of the public street, or square, of said city. The fee to this particular portion of the square, or street, was in Hill County. Its courthouse, it seems, was located in the center of this square. This part of the square, or street, where relator was had been paved and was then and for many years prior thereto had been used by the public generally for road or street purposes. The city swept the whole of this paved street, or square, and exercised control over it as one of the public streets, or thoroughfares, of the city. It appears that the relator offered for sale apples upon the square, or streets, of said city, embraced within the fire limits thereof and that such articles offered for sale and sold by him were not products grown or raised upon his property or property rented by him or under his control.

The main contention by relator is that said ordinance is void because it is class legislation; that it prohibits peddlers from selling on its streets and authorizes other persons to sell on its streets within said fire limits, any products raised or grown upon their property, rented by them or under their control, claiming that said ordinance violates that clause of our Constitution, section 3, article 1, which is: "All free men, when they form a social compact, have equal rights; and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services." It is undoubtedly the law of this State, as held by the Court of Civil Appeals in Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W. Rep., 668, that persons have no vested right to make marts of the streets, alleys and other public places in any incorporated town. It is also unquestionably the

law of this State that the Legislature may classify persons according to their business and may apply different rules to those which belong to different classes, and that municipal corporations, when authorized by their charters, can also do this. Supreme Lodge v. Johnson, 98 Texas, 1; Campbell, Receiver, v. Cook, 86 Texas, 630; Ins. Co. v. Chowning, 86 Texas, 654; Marchant v. Ry. Co., 153 U. S., 380; Green v. State, 49 Texas Crim. Rep., 380; Smith v. State, 54 Texas Crim. Rep., 298; Beaumont Traction Co. v. State, 57 Texas Civ. App., 605, 122 S. W. Rep., 615; Douthit v. State, 36 Texas Civ. App., 396, 82 S. W. Rep., 352, and 98 Texas, 344; Ins. Co. v. Gooding, 49 S. W. Rep., 123; Ins. Co. v. Mettler, 185 U. S., 308; Nash Hardware Co. v. Morris, 146 S. W. Rep., 874; R. R. v. Taylor, 134 S. W. Rep., 819; R. R. v. Grenig, 142 S. W. Rep., 135; De Grazier v. Stephens, 101 Texas, 194.

This court, in Ex parte Henson, 49 Texas Crim. Rep., 177, expressly held that the City of Greenville in Hunt County, had the power to prohibit the use of certain streets and the public square of that city for the purpose of peddling. The City of Greenville, as shown by the opinion in that case, was incorporated under the general incorporation laws of this State, and that it was given the same power and authority over its streets that the City of Hillsboro was substantially given over its streets, square, etc. In that case, as is shown by the report of it, the City of Greenville made it an offense "for any person to peddle or in any other manner sell any kind of merchandise, patent medicine, or nostrum on the public square and certain streets," naming them. Henson contended that the ordinance was unreasonable and, therefore, void. He also contended that the ordinance was inseparable and that it applied to others as well as peddlers. This court held that the rule of *ejusdem generis* applied and that the "ordinance evidently had in view as its primary object, to prohibit peddling in the public streets and on the public square of Greenville, and what follows as to other sales relates to this character of sales—that is, sales by peddling." The opinion then proceeds to hold that even if wrong in applying the rule of *ejusdem generis* that then in the latter part of the ordinance, indicating that others than peddlers were prohibited from using the said streets and square for peddling purposes, that it was severable, and held the ordinance constitutional and within the powers of the corporation to prohibit peddling on said streets and public square. The opinion also holds: "We have no doubt that it is within the power of the Legislature to confer on towns and cities the power to regulate peddling within the jurisdiction of such towns and cities, especially on the public streets and squares of such cities, the same being peculiarly within the jurisdiction of towns and cities. Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W. Rep., 668. Nor does the fact that the State, as is the case here, may license peddlers, exclude the idea of municipal supervision, where the power for such supervision is given in the charter."

It is true that this court has uniformly held that ordinances levying

any occupation tax on peddlers which exempts from its operation other persons as peddlers, were invalid. Ex parte Jones, 38 Texas Crim. Rep., 482; Raincy v. State, 41 Texas Crim. Rep., 254, and other cases. And that ordinances which exempted certain persons within any given class is uniformly held invalid. But those cases do not apply to this question. As shown by these decisions and on like questions the very reason that they were held invalid and violative of said provision of our Constitution was because they excepted from the operation of the act other persons *within that class,* not because the Legislature or the municipal corporation did not have the right or power to make classes which were founded upon some just basis, and tax, regulate or prohibit one class and not the other.

The question raised in this case has many times been decided adversely to relator's contention by the courts of different States. State v. Montgomery (Me.), 43 Atl. Rep., 13; People v. Sawyer (Mich.), 64 N. W. Rep., 333; In re Nightingale, 11 Pick., 167; 2 Dillon on Municipal Corporations, sec. 706 (5 ed.) ; Commonwealth v. Rice, 9 Met. (Mass.), 253; Wartman v. Phila., 33 Pa. St., 202; Dutton v. Mayor, 121 Tenn., 25; People v. De Blaay, 137 Mich., 402; see also note in vol. 16, p. 1030, Am. & Eng. Ann. Cases, where many cases to this effect are cited.

In the case of People v. Sawyer, 64 N. W. Rep. (Mich.), 333, the Supreme Court of Michigan said: "The discrimination in favor of mechanics and farmers in the sale of their products is within the power conferred by the charter upon the common council. These immunities have been recognized for many years. By the statute of 50 Geo. III, c. 41, sec. 23, real workers and makers of goods within Great Britain were exempt from the payment of the license which was imposed upon hawkers and peddlers. 1 Barn. & Adol., 279; 10 Barn. & C., 66. In many if not in most of the American States, these immunities are granted to mechanics and farmers selling their own products, and the power is not questioned."

In the case of State v. Montgomery, 43 Atl. Rep. (Me.), 13, the Supreme Court of Maine said: "And the argument is that the Legislature may not properly say that acts which, if committed by one person, are a crime, if committed by another are not a crime. It is undoubtedly true that police regulations of this kind, to be valid, must be uniform, and must not discriminate against one class, and in favor of another. In other words, in an act to regulate peddlers, all peddlers of the same kind, under the same circumstances, must be regulated alike. It is a 'natural, inherent, and inalienable right' of every man that he shall be subject only to the same burdens, limited only by the same restraints, regulated only by the same laws, as is his neighbor, situated under the same conditions as he is. Is this right abridged by this statute? It is contended that the exception which permits one to peddle without license 'the products of his own labor, or the labor of his family, any patent of his own invention, or in which he has become interested by being a member of any firm, or stockholder in any corporation which

has purchased the patent,' is a discrimination in favor of some and against others. We do not think so. If one may peddle freely the products of his own labor, so may all. The products may be unlike, but the freedom to prosecute one's own business and to peddle his own products is free alike to all. So of the other exceptions. While it may happen that various producers may peddle each the product of his own labor without license, but not of the labor of another, still we think this fairly answers the requirements of uniformity. The Legislature is the sole judge of the extent to which the business of peddling should be regulated, and its conclusions are final, so long as the burdens imposed do not bear unevenly upon citizens. Ex parte Thornton, 12 Fed. Rep., 538."

In the case of Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W. Rep., 668, cited above, our third Court of Civil Appeals, in discussing the power and right of a municipal corporation of our State to prohibit the use of its public streets for market places, speaking through Judge Key, said:

"The ordinance in question does not undertake to prevent or interfere with the right of the appellees to purchase, sell, or otherwise deal in the products referred to upon their own premises; nor does it prohibit other persons from carrying such products and delivering them to appellees upon their premises. It may, and doubtless will, interfere with the privileges formerly enjoyed by the public at large of exhibiting such products upon the streets and in other public places within the territory referred to, and the convenience resulting therefrom to the appellees, as dealers in such products. But appellees have no vested right to make marts of the streets, alleys and other public places; and to deny them the privilege of so doing is not to destroy or deteriorate any of their property rights. It may result in inconvenience, and even additional expense to them; but there are many laws, and especially police regulations, that have this effect, and are, nevertheless, valid."

Many reasons, all of which are very reasonable, could be given why the municipalities should have and do have the right to make just such classifications as was made by this ordinance. It is noticed that the ordinance prohibits peddling on those streets which are included within the fire limits. This, it occurs to us, in the larger towns and cities of this State, is necessary to be done. We know, as common knowledge, that fire limits in towns and cities include only that part of the thickly settled and business portion. In case a fire breaks out within this territory it is necessary that the streets be kept open so that the proper fire department with its apparatus will not be obstructed in reaching the fire as quickly as possible. If peddlers were not prohibited from occupying the streets within such localities they could take possession of the streets and obstruct the fire department in such a way as to be a menace to the whole business, and thickly settled portions of towns and cities. As aptly suggested by Hon. Tarlton Morrow, city attorney

of Hillsboro, and who has filed a brief herein in behalf of the city and respondent, that the city is charged with the duty of looking after the health of the citizens, and it is a known fact that products usually peddled are not so fresh, nor wholesome as those offered by the farmer who raises them and himself offers them for sale on the streets. The farmer or other producer who brings his own raised products to town only comes occasionally and does not remain long; whereas, the peddler takes his stand in the public street, or on the public square, in the early morning and remains throughout the whole day; that the filth that accumulates from the standing of teams and throwing of the peel of fruits and other refuse matter into the street, makes more or less a nuisance and a burden which must be removed, and is, daily by the city authorities. If, therefore, the city did not have authority to make such classification and prohibit the peddler from occupying the streets for his business, they could practically take charge of the whole street every day and from day to day throughout the year, and thus maintain their places of business in the public streets which were never intended for any such purpose. Whereas, the other merchants have to buy their own lots, erect their own buildings, or rent them and stay on their own property for the purpose of conducting their business when their competitor, the peddler, could, if not prohibited, monopolize the whole streets, pay no rent or other revenue to the city, create a nuisance and an obstruction continuously in various ways. So that we hold the classification made by this ordinance is reasonable and proper and that the ordinance, for no purpose is invalid, but on the contrary it is valid. State v. Barbelais, 101 Me., 512; Louisville v. Raupe, 6 Mon. (Ky.), 591; Com. v. Rice, 9 Met. (Mass.), 253; Atty. Gen'l v. Tongue, 12 Price, 51; Com. v. Roenisk, 10 Pa. Dist., 51; 21 Cyc., 372, and cases cited in note 49; 3 Dil. Mun. Corps., sec. 1166, and notes.

Appellant's contention that he was on that part of the public square, the fee and title to which was in the county, and that the county gave him authority to establish and maintain his peddling business there, can not be maintained. Where he located and kept his wagon and horses in his peddling business, as shown, was in the public street or square. Hill County could no more give him power or authority to obstruct the streets or public square than any other corporation or person could do. Clearly this location was within the city limits and on the public streets or square, paved and used for public uses and the city, and not the county, had jurisdiction, power and authority over it, at least, for street purposes and for a public square for the public. The judgment of the county judge will be affirmed and the relator remanded to the custody of the marshal.

*Remanded to custody.*

HARPER, Judge.—I concur in opinion remanding relator.

DAVIDSON, Presiding Judge, dissents.

ON REHEARING.

May 14, 1913.

PRENDERGAST, JUDGE.—Relator by his attorney has filed herein a very lengthy motion for a rehearing. There is but one assertion therein which we deem it either necessary or proper to mention. We quote that assertion: "In the majority opinion the court says: 'The main contention by relator is that said ordinance is void, because it is class legislation; that it prohibits peddlers from selling on its streets, and authorizes other persons to sell on its streets within said fire limits, any products raised or grown upon their property, rented by them or under their control.'

"It is true that relator asserts that the ordinance involves class legislation in the most objectionable form and of the 'purest ray serene'; but he makes no such contention as is stated in the latter part of the quoted portion of the opinion. He does not claim to be a 'peddler' and there can not be found a scintilla of evidence in the record to show him to be such; and as the whole fabric of the opinion is shot through with this thread of error, and as the judgment appears, fundamentally, to rest upon an assumption not only dehors the record but flatly contradictory thereof, we deem it appropriate, then, to discuss relator's status in the purview of the ordinance."

In the record before us the following is specifically agreed to by both parties as *facts.*—not that evidence was introduced showing or tending to show it—but as *facts,* towit:

"On the 12th day of December, 1912, a warrant was duly issued out of the City Corporation Court of the city, being based upon a complaint in due form made and filed charging the defendant with vending and displaying goods, wares, and produce upon the streets of the City of Hillsboro embraced within the fire limits, and of peddling goods, wares, and produce upon such streets, when he was not then offering for sale products raised or grown upon property owned or rented by him or upon property under his control.

"Upon this warrant B. D. Hooks, the city marshal, arrested the defendant, and still holds him by reason of the authority of said complaint and warrant.

"The defendant on the 12th day of December, 1912, in the City of Hillsboro, Texas, and before the making of said complaint, did offer for sale and vend and peddle goods, wares, and produce upon the streets of the city embraced within the fire limits, towit: on Elm Street on the public square, and that such goods, wares, and produce were not products grown or raised upon property owned or rented by him or under his control,—towit: apples."

It occurs to us that this shows not only "a scintilla of evidence," but it goes a little bit further, and, we think, is amply sufficient to show that not only did relator use the streets within the fire limits of the

City of Hillsboro for the purpose of vending or displaying goods, wares, merchandise and produce, but that he did offer for sale and vend and peddle goods, wares and produce upon such streets not grown or raised on property owned by him, or under his control, and that this shows he was a peddler.

Other than the very lengthy motion for a rehearing, in the opinion of the writer hereof, there is no other noticeable feature of it, except an uncalled for and an unnecessary exhibition of ill-temper.    The motion is overruled.

                                                              *Overruled.*

DAVIDSON, Presiding Judge.—I will write later.

DAVIDSON, Presiding Judge (dissenting).—As the ordinance charged to have been violated. is set forth in the majority opinion, I deem it unnecessary to copy it.   My brethren have decided this case, resting it, in my opinion, upon erroneous lines.   They base their conclusion, as I understand them, mainly upon the doctrine of the reasonableness of the ordinance.   That disposes of the case upon an issue not primarily involved.   I do not care to discuss that proposition, but I think it unreasonable as all acts of legislative bodies are invalid which discriminate in favor of one and against others.   The question here is, does the ordinance discriminate between citizens?   If it does, it is void, and the question of reasonableness has but little to do with it.   I believe that fairly construed no legally safe conclusion can be reached otherwise than that the ordinance is discriminating in its nature in favor of certain citizens as against all others engaging in the same or similar lines of business and selling the same products, etc. The prevailing opinion seeks to avoid this by erroneous classification. The taxing power is not here involved.   The question here is discrimination in vending things and selling on the streets, and not the question of selling without license.   Under the organic law every citizen in Texas is entitled to all the rights and privileges of every other citizen, and this applies as well to *privileges as to rights.*   Bill of Rights, section 3; Harris' Annotated Const., p. 50.   The Legislature has no power to enact legislation contravening this provision of the Constitution, much less has that body authority to empower municipal corporations to do so. That cities and towns may control streets does not authorize the creation of ordinances which discriminate in the control of such streets between the citizens of the municipality or those of the State.   When an ordinance is passed, it must not discriminate against anyone who may come under its operation.   I do not care here to discuss the authority of cities and towns to control streets by means of reasonable ordinances, but would say 'no ordinance can legally stand or ought legally to stand, and can not be reasonable where it discriminates in favor of or against our citizenship.   I understand that in these latter days there is a growing tendency towards the proposition that government is

superior to the people and the Constitution.    This would hardly be
asserted directly and explicitly, but there is a tendency in that direc-
tion.   Of course, this is not correct, and if carried to its legitimate con-
clusion would be subversive of our constitutional form of government.
*Our people created this government;* the government did not create
them.   The government is our *subject; we are not its subjects.*   The
citizenship of Texas are the sovereigns and "all power is inherent in
the people." and they and they alone can make and unmake their gov-
ernment and Constitution.   If they do not like their Constitution they
can make another, but legislative bodies—State or municipal—can not
make or change that instrument.   This is plainly set forth in the Bill
of Rights.   Among other things set forth in the Bill of Rights clearly
and emphatically is the reserved right and guaranty that every citizen
has equal rights, and no man or set of men is entitled to separate public
*emoluments* or *privileges.*   Bill of Rights, section 3; Harris' Anno-
tated Constitution, page 60, for collation of cases.   It is again emphat-
ically emphasized in that document that no citizen shall be deprived of
*life, liberty, property, privileges* or *immunities,* etc., except by due course
of the law of the land.   Bill of Rights, section 19; Harris' Annotated
Constitution, page 184, for cited cases.

To prohibit one citizen or class of citizens from engaging in a busi-
ness under like or similar circumstances with all others similarly sit-
uated is plainly violative of the provisions of the Constitution.   Ex parte
Jones, 38 Texas Crim. Rep., 482; Rainey v. State, 41 Texas Crim. Rep.,
254; Ex parte Woods, 52 Texas Crim. Rep., 575; Gustafson v. State,
40 Texas Crim. Rep., 71; Poteet v. State, 41 Texas Crim. Rep., 268;
Bolen v. State, 48 S. W. Rep., 1118; Carraci v. State, 48 S. W. Rep.,
1118; Wilson v. State, 48 S. W. Rep., 1119; Owens v. State, 53 Texas
Crim. Rep., 105.   It is useless to multiply the cases.   These are
sufficient.

This ordinance authorizes certain citizens to sell, etc., certain prod-
ucts, etc., and prohibits all others from engaging in the same business
or to sell the same character of product or goods under similar circum-
stances.   If this is not discrimination I am rather at a loss to know
what it takes to constitute discrimination.   It is a small sized monopoly,
confined to certain citizens exclusive of all others, a miniature trust
created by municipal ordinance confined to the favored few.   I do not
care to elaborate this question.   The above cited cases are clearly in
point, and ought to settle the question.   The Constitution prohibits this
character of legislation, and this would be more than ample authority
without cases.   The Constitution is superior to city ordinances, and
controls all legislative bodies of whatever magnitude; and as well the
judicial and executive departments of government.   I do not believe
it would be seriously asserted that the legislative, executive or judicial
department combined have the power to set aside, override or minimize
constitutional authority or limitation.   The cases cited by my brethren
on the questions decided in the cited cases may be correct as decided,

but they are inapplicable to this case and the question here involved. Cases properly decided, if properly applied, are all right, but because properly decided on the question therein involved does not and can not constitute them authority to sustain propositions not involved in those decisions. The question being different, the cases do not apply. Having lost sight of the doctrine of discrimination in legislation and in this ordinance, it is but natural the opinion should also lose sight of the inapplicability of the cases cited in the opinion. Having ignored the discrimination in the ordinance, my brethren have cited inapplicable decisions involving other questions, and called them into service to do guard duty in this case. The ordinance here involved is that under which relator was arrested, with its discriminating qualities, and not the ordinance referred to in the Henson case, 49 Texas Crim. Rep., 177. The two ordinances are entirely different. The premises being wrong, the cases do not fit, and the conclusion reached necessarily erroneous. The Henson case, supra, does not support my brethren in their opinion, nor can it be held as authority in this case as will be plainly seen from reading it. The ordinance discussed in the Henson case made no exception, hence there was no discrimination. It applied to all citizens alike, and the punishment provided was for any and every citizen of Texas who happened to come within its denunciation. The question of class legislation, therefore, was not in that case. The question here is class legislation, and pointedly so on the face of the ordinance. The same may be said of the case of Wade v. Nunnelly, 19 Texas Civ. App., 256, 46 S. W. Rep., 668, as of the Henson case. The question in that case was, could the writ of injunction be made available to prevent the enforcement of a penal ordinance. It was claimed in that case that the ordinance was in law void, therefore, it was sought to enjoin its enforcement by writ of injunction. The court decided that the writ of injunction was not available, it being a criminal case, "unless it is made to appear that such enforcement would result in irreparable injury to property rights." The validity of the ordinance was not necessarily involved as a question to be decided, and as I understand that decision the court did not decide the case on that question. There were some expressions as to the power of the city council to ordain reasonable ordinances, but that is obiter dicta, and this whether that statement in the opinion was right or wrong from a legal standpoint. The question was not necessary to a decision of that cases as it is not, I think, in this case, as to the power of a city to control its streets. The question is, that in the control of those streets there should be no discrimination as against one class of citizens or in favor of another class of citizens; that the control must be exercised with equal rights to all and without class legislation. The ordinance in the Wade v. Nunnelly case was unlike the ordinance here involved. That ordinance was intended to apply to all alike, without discrimination in favor of or against any citizen or class of citizens. That decision, therefore, does not sustain the majority opinion, nor has it any applicability to the question here

involved, that is, discrimination. I do not believe my brethren would cite approvingly the decision in the Wade v. Nunnelly case on their decision of the injunction question, for it is directly contrary on that question to their opinion in Ex parte Roper, 61 Texas Crim. Rep., 68, and Ex parte Looper, 61 Texas Crim. Rep., 129. The Wade v. Nunnelly decision is in conformity with the writer's dissent in Ex parte Allison, 48 Texas Crim. Rep., 6,34, at page 641. See dissenting opinions in Ex parte Allison case, supra, and Ex parte Roper, 61 Texas Crim. Rep., 68. I do not care to discuss the two cases, Wade v. Nunnelly and Ex parte Henson further; they do not apply here nor support the pre-vailing opinion in this case.

It perhaps was not necessary here to dissent as my views on these questions are so well known to the legal profession and the bench, but I do so because I feel persuaded that my brethren are in error in their application of cited cases in support of their conclusion. So far as I have been able to ascertain this seems to be an opinion on pioneer lines, and may be made to become the progenitor of another line of decisions which, in my judgment, are erroneous and out of harmony with our theory of government, wherefore I have deemed it advisable to say as much as I have said.

The Hon. Luther Nickels, counsel for relator, has filed an able and exhaustive review of the cases cited by my brethren and has so fully, in my judgment, answered the opinion I believe it right and proper that his argument should be perpetuated, and it, therefore, will be in substance printed with the report of the case. There is much in it of value to the bench and bar of the State.

For the reasons indicated I enter most respectfully this dissent from the decision of the case. The relator ought to be discharged, and the ordinance held invalid.