## BRUCE v. CITY OF GAINESVILLE.
### (No. 8408.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1916. On Rehearing, Feb. 19, 1916.)

1. MUNICIPAL CORPORATIONS ☞720—PUBLIC MARKET PLACE—REGULATION—POLICE POWER—EFFECT OF GRANT.

That land was granted to a city to be used for a public trading and market square, open to the public generally, did not deprive the city of its right, in the proper exercise of its police powers, to regulate trading thereon.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. ☞720.]

2. MUNICIPAL CORPORATIONS ☞720—PUBLIC MARKET PLACE—REGULATION—VALIDITY.

Under the Gainesville City Charter, art. 2, § 23, providing that the city council may make all needful regulation as to the sale of farm products, and article 3, § 7, authorizing the council to assess, license, and tax hawkers and peddlers, the city had power to enact an ordinance, prohibiting persons engaged in the business of purchasing farm products from others from displaying and selling such products in the public market place maintained by the city, and streets and alleys adjacent thereto.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. ☞720.]

3. MUNICIPAL CORPORATIONS ☞720—PUBLIC MARKET PLACE—REGULATION—VALIDITY OF ORDINANCE—CLASSIFICATION.

An ordinance, prohibiting the use of the public market square and streets and alleys adjacent thereto to sell or display farm products and exempting therefrom those who sold or displayed products grown on land owned or controlled by them was not invalid because of discrimination against nonproducers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. ☞720.]

4. CONSTITUTIONAL LAW ☞48—VALIDITY OF CLASSIFICATION—PRESUMPTION.

Where there could have existed a state of facts justifying the classsification made by a statute, the courts will assume that it existed.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ☞48; Statutes, Cent. Dig. § 56.]

5. MUNICIPAL CORPORATIONS ☞720—PUBLIC MARKET SQUARE—REGULATION—VALIDITY OF CLASSIFICATION—PRESUMPTION.

An ordinance, prohibiting the use of the market square and streets and alleys adjacent thereto to sell and display products grown on land not owned or controlled by the seller was not merely to confer a special privilege on the producing classes, but to afford citizens of the city an opportunity at all times to secure fresh farm products and exclude those which are stale.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1536–1541; Dec. Dig. ☞720.]

### On Rehearing.

6. COURTS ☞247 — COURT OF CIVIL APPEALS—CERTIFYING QUESTIONS TO SUPREME COURT.

In cases in which the Supreme Court has jurisdiction on a writ of error, the Court of Civil Appeals will decline to certify a question to the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 752; Dec. Dig. ☞247; Appeal and Error, Cent. Dig. § 1773.]

Appeal from District Court, Cooke County; C. F. Spencer, Judge.

Injunction by G. W. Bruce against the City of Gainesville. From an order refusing to grant a temporary injunction, plaintiff appeals. Affirmed.

J. T. Adams, of Gainesville, for appellant. Davis & Davis and W. G. Howeth, all of Gainesville, for appellee.

CONNER, C. J. This is an appeal from an order of the district court of Cooke county refusing to grant a temporary writ of injunction. Appellant's petition for the writ attacks the validity of the following ordinance passed by the city of Gainesville:

"An ordinance, prohibiting the use of the market square and the streets adjoining thereto, for the purpose of vending or displaying goods, wares, merchandise, or produce or other articles, or for the purpose of peddling goods, wares, merchandise or produce or other articles. Exempting from the provisions of this ordinance, persons who vend, display or peddle goods, wares, merchandise and other articles raised or grown upon land owned, rented or controlled by him. Providing a penalty for violating the ordinance and declaring an emergency.

"Be it ordained by the city council of Gainesville.

"Section 1. It shall hereafter be unlawful for any person to use the market square or any of the streets or alleys adjacent thereto in the city of Gainesville, Cooke county, Texas, for the purpose of vending or displaying goods, wares, merchandise, produce or other articles. Provided however that this ordinance shall not apply to any person who himself offers for sale, vends, displays or peddles nothing except products raised or grown or produced by himself, or any member of his family residing with him upon property owned, rented or controlled by him.

"Sec. 2. Any person who violates any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than one dollar nor more than one hundred dollars.

"Sec. 3. The fact that there is now no ordinance regulating the use of the market square in the city of Gainesville, Texas, or the streets adjacent thereto, and the further fact that raisers and growers of produce are being deprived of the benefits of the market square and by reason of persons who buy and sell and peddle such produce taking stands for days at a time, create an emergency ·and an imperative public necessity that the rule requiring ordinances to be read on three several meetings of the council should be suspended and this ·ordinance be placed upon its third and final reading and passage and that it take effect from and after its passage and said rule is hereby suspended and that this act take effect from after its passage and it is so ordained.

"Unanimously adopted by the council, this the 7th day of Sept., 1915. J. Z. Keel, Mayor.
"Attest: F. M. Johnson, City Secretary."

Appellant alleged, in substance, that the block of land to which the ordinance relates had been purchased by the city in 1910, certain citizens of the city and county named having contributed $2,000 of the purchase money; that as a part of the consideration for the deed it was provided that said—

"land shall be designated and set apart by said city as a public market place and maintained as

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

such permanently and kept in good sanitary condition."

That it was the intention of the grantors in the deed, and of the city in accepting the transfer, that the block of land should be used for a public trading and market square, as a place where all citizens of the county and public generally could go, free of charge, and expose all character of farm products, fruits, vegetables, and live stock for sale or trade, and where any and all such property could be sold, bartered, and exchanged; that upon the acquisition of said property the city prepared said block of land for the purpose so indicated and dedicated the same to that use, and has continually so maintained it since. It was further alleged that:

"The plaintiff is now engaged in farming and producing farm products and fruits and vegetables, and is also engaged in buying up farm products and fruits and vegetables, and selling the same from his farm wagon on said public market square at retail to the public generally throughout the county, and has been so engaged many years, and has built up and established a demand for the fruits and vegetables and farm products produced and purchased by him from others; that his net profits arising out of the purchase and sale of such farm products and fruits and vegetables equaled the sum of $40 per month, which sum he was realizing out of his business at the time of the adoption and publication of the ordinance complained of."

It was further alleged that the enforcement of the ordinance quoted exposed the plaintiff to vexatious and oppressive criminal prosecutions, and deprived him of valuable property rights, and it is insisted that the ordinance is void in that it is discriminating, restricts the right to engage in a legitimate trade, and is in violation of the contract made with the parties who sold the market square to the city. ·

[1, 2] It is not alleged, nor does it otherwise appear from the proceedings, that the plaintiff was a party to the contract under which the city acquired the property, so that, if at all, it is by indirection only that a right of action in appellant exists for a breach of its terms. The city made no agreement with appellant to dedicate and use the block of land conveyed as a market place, and those who were parties on the face of the agreement are not complaining.· But in no event do we think that the conveyance, to the city or agreement alleged should receive a construction that would deprive the city of a proper exercise of its police powers. Appellant alleges that he is engaged, not only in producing farm products, fruits, and vegetables, but also that he is engaged in purchasing—

"from other farmers farm products and fruits and vegetables, and has been for many years displaying and selling the same from his farm wagon stopped on the said public market and trading square."

It is not pretended that the appellant is prohibited by the ordinance or has been in any manner impeded in the sale of farm products, fruits, and vegetables produced by him. So that, at least the question resolves itself into whether the ordinance is a valid exercise of the legislative powers of the city of Gainesville in prohibiting persons who are engaged in the business of purchasing farm products from others and displaying and selling the same on the market square.

Appellant sets out section 23, art. 2, of the charter of the city, which is a special one providing that:

"The city council shall have the power and authority to make all needful and necessary regulations in regard to butchers and persons selling meats, farm products, fish, vegetables, and fruits, and all foodstuffs and to require the same to be inspected and condemned if not found wholesome, and to provide penalties for violations thereof."

Also section 7, art. 3, providing that:

"The city council shall have power to assess, license, and tax hawkers, peddlers, and auction-. eers," etc.

[3, 4] And it is contended that the power thus given to the city is the power to regulate and tax, and not to prohibit, as the ordinance complained of provides. It is admitted, however, that the charter contained further provisions conferring upon the city the general right to control the public streets, alleys, and public grounds of the city and to abate nuisances, and we think under this general power the ordinance in question must be maintained. It is to be observed that the ordinance contains a clear classification of the persons who are prohibited from the use of the market square, as appellant sought to do. All persons within the nonproducing class are by the ordinance treated alike. As between them there is no discrimination. Nor is there any preference right or discrimination made between the persons within the general classification of producers of farm products, vegetables, etc. As such, plaintiff, in common with all other persons, is, under the terms of the ordinance, entitled to the use of the square. And under the wide range given to legislative bodies in classification generally, we cannot see how appellant has legal cause to complain on this ground. As said by our Supreme Court in the case of Supreme Lodge, U. B. A. v. Johnson, 98 Tex. 5, 81 S. W. 19:

"The Legislature may classify persons, organizations, and corporations according to their business, and may apply different rules to those which belong to different classes."

In this respect there can be no difference in a classification made by the Legislature and in one made by the legislative body of an incorporated city given legislative powers in the control of its public streets, alleys, and grounds, and, as was said in the case of Nolen v. Riechman (D. C.) 225 Fed. 812, cited by us in the case of Auto Transit Co. v. City of Ft. Worth (No. 8304) 182 S. W. 685 to which we also refer for a discussion of the subject:

"The presumption is always in favor of the validity of legislation; and if there could exist a state of facts justifying the classification or

restriction complained of, the courts will assume that it existed."

[5] It is in effect insisted that the object of the ordinance in question was to confer upon the producing classes an especial privilege, but we cannot say that this was the only object of the ordinance. It is admitted that the city has such police powers as is necessary to protect the life, health, and safe-being of its citizens, and it may be well said that the object of the ordinance was to afford citizens of the city of Gainesville an opportunity at all times to procure fruits, vegetables, and farm products generally, fresh from the soil, and to exclude stale vegetables and other deteriorated farm products secured and exhibited by nonproducers. As illustrating the thought there suggested, we may refer to the case of St. John v. New York, 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909. The ordinance there under consideration was intended to prevent the sale of adulterated and unwholesome milk, and provided certain penalties for the sale of milk below a specified standard. The ordinance it seems also provided for the taking of samples of milk exhibited for sale in creameries and factories, and that if upon an analysis it was found that the sample inspected was below the specified standard, an analysis of the milk as it came from the cow of the producer might also be made, and if the analysis of the sample was not lower than the analysis of the fresh milk, then the penalties of the act would not apply to the producer. Such exemption, however, was made not to apply to the nonproducing seller of the milk, and the ordinance was complained of, as here, on the ground that it was discriminating. The court, however, held that it was within the power of the city to make the classification indicated, that it was not unreasonable, and the ordinance was upheld as a valid exercise of the police powers of the city.

The case of Ex parte Bradshaw, 70 Tex. Cr. R. 166, 159 S. W. 259, is closely in point. The ordinance there considered is very similar to the one here under consideration. It made it unlawful to use streets or alleys embraced within the fire limits of the city for the purpose of vending, displaying, or peddling goods, but provided that the ordinance should not apply to one offering for sale any product raised upon property controlled by himself. It was held by our Court of Criminal Appeals, speaking through Justice Prendergast, that no vested right existed in persons to make a market of the streets and public places of an incorporated town, and that to deny them the privilege of so doing is not to deteriorate any of their property rights, and the ordinance under consideration was upheld on the theory that the classification between producing and nonproducing persons made by the ordinance was a reasonable and valid exercise of the powers of the city.

Without further discussion, we conclude that the order of the court below denying an injunction sought must be upheld, and the judgment affirmed.

### On Rehearing.

We have again considered the question presented and discussed on original hearing, and think that, whatever force should be ascribed to the authorities cited in behalf of appellant on his motion for rehearing, we must adhere to the conclusions originally announced, particularly in view of the opinion of our Court of Criminal Appeals in the case of Ex parte Bradshaw, 70 Tex. Cr. R. 166, 159 S. W. 259, construing an ordinance very similar to the one attacked in this case.

[6] In answer to the suggestion that we certify the question involved to the Supreme Court for its determination, we will add that it has been the ordinary practice of this court, in cases in which the Supreme Court has jurisdiction upon a writ of error, to decline to certify. See Day v. Mercer, 175 S. W. 764.

It is accordingly ordered that the motion for rehearing be overruled.